No. 05-066

IN THE SUPREME COURT OF THE STATE OF MONTANA

2006 MT 8

HOLLY WURL,

    Plaintiff and Appellant,

    v.

POLSON SCHOOL DISTRICT NO. 23,

    Defendant and Respondent.

APPEAL FROM:    District Court of the Twentieth Judicial District,
                In and For the County of Lake, Cause No. DV 03-87
                Honorable C. B. McNeil, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

            J. Tiffin Hall, Attorney at Law, Missoula, Montana

        For Respondent:

            Debra A. Silk, Tony Koening, Montana School Boards Association,
            Helena, Montana

                            Submitted on Briefs: August 23, 2005

                                    Decided: January 10, 2006

Filed:

        _____
                            Clerk

Chief Justice Karla M. Gray delivered the Opinion of the Court.

¶1 Holly Wurl (Wurl) appeals from the judgment entered by the Twentieth Judicial District Court, Lake County, on its order granting summary judgment to Polson School District No. 23 (School District). We affirm.

¶2 The sole issue on appeal is whether the District Court erred in granting summary judgment to the School District.

BACKGROUND

¶3 The School District employed Wurl as a speech-language pathologist from August of 1993 through June of 2002. Wurl's employment with the School District was governed by nine separate written employment contracts, with each contract encompassing a term of one year. The final contract between the parties was signed by Wurl on June 4, 2001, and provided that the School District would employ Wurl for the 2001-2002 school year. The contract was entitled "Teacher Contract," stated that Wurl was "a legally qualified and certified teacher under the School Laws and Regulations of Montana" and referred to Wurl throughout as a "Teacher." It is undisputed that Wurl is not a legally qualified and certified teacher under Montana law. The contract also referred to a Master Agreement (MA), which is a separate collective bargaining agreement between the School District and the Polson unit of the Montana Education Association (PMEA). Among other things, the MA contains provisions governing the termination of teachers and grievance procedures culminating, at the sole option of the PMEA, in submission of grievances to binding arbitration.

2

¶4 On May 13, 2002, at a meeting of the School District's Board of Trustees (Board), the Board voted unanimously to not renew Wurl's contract for the 2002-2003 school year. It is undisputed that the Board did not follow the procedures outlined in the MA for termination of a teacher. Nor did Wurl initiate a grievance under the MA to challenge the Board's decision. Rather, in May of 2003, Wurl brought this action against the School District alleging that the Board's act of terminating her employment with the School District without following the MA termination procedures constituted a breach of contract and breach of the implied covenant of good faith and fair dealing. She also brought claims for wrongful discharge and violation of her right to due process as guaranteed by the Montana and United States Constitutions.

¶5 The School District subsequently moved the District Court for summary judgment as to the entirety of Wurl's complaint. The School District first asserted that Wurl could not bring an action under the Wrongful Discharge from Employment Act (WDEA), §§ 39-2-901 through -915, MCA, because her complaint clearly alleged that her employment was covered by either a written contract for a specific term or a collective bargaining agreement, thus making the WDEA inapplicable pursuant to § 39-2-912(2), MCA.

¶6 The School District further asserted that Wurl's remaining claims failed because they were based on her allegation that the Board failed to follow the termination procedures set forth in the MA. The School District contended that the MA did not directly apply to Wurl's employment because she was not a "teacher" as contemplated in the MA, and that the provisions of the MA were not incorporated into her employment contract. Thus, the School

3

District asserted Wurl was not entitled to the rights afforded teachers under the MA termination procedures. As a result, according to the School District, Wurl's employment was governed by a written contract for a specified term which expired by its own terms and did not require the School District to renew the contract or otherwise extend Wurl's employment. On this basis, the School District argued there was no breach of contract, no breach of the implied covenant of good fair and fair dealing, and no violation of due process rights, and it was entitled to summary judgment as a matter of law. The School District also argued, in the alternative, that, if the MA applied to Wurl's employment, it still was entitled to summary judgment on her claims because she failed to follow the grievance procedures set forth in the MA.

¶7    In response to the School District's motion for summary judgment, Wurl argued that her employment was subject to the provisions of the MA because her employment contract, by its terms, specifically incorporated the MA. She further argued that the School District should be equitably estopped from arguing that she could not bring her claims because she failed to follow the MA's grievance procedures. Finally, Wurl conceded that her employment was excluded from coverage under the WDEA.

¶8    The District Court subsequently entered its order granting summary judgment to the School District as to the entirety of Wurl's complaint. The District Court concluded that § 39-2-912(2), MCA, precluded Wurl from bringing a claim under the WDEA. The court also concluded that nothing in the employment contract indicated an intent by the parties that Wurl's employment be covered by the MA; that, other than the MA's salary schedule, the

4

provisions of the MA were not incorporated by reference into the employment contract; and that Wurl's employment was not otherwise subject to the MA because Wurl was not a "teacher" as defined in the MA.

¶9 Based on these conclusions, the District Court further concluded that Wurl's employment with the School District was governed by a written contract for a specified term which did not provide Wurl with a reasonable expectation of continued employment beyond the term of the contract. Thus, the court determined that the School District did not breach the contract or the implied covenant of good faith and fair dealing, and did not violate Wurl's right to due process. The District Court also concluded that, even if Wurl's employment were governed by the MA, her failure to pursue the MA's mandatory grievance procedures barred her from bringing her claims. The court did not address Wurl's equitable estoppel argument. The District Court entered judgment on its order granting summary judgment to the School District and Wurl appeals.

STANDARD OF REVIEW

¶10 We review a district court's grant of summary judgment *de novo*, using the same standards applied by the district court. *Cole v. Valley Ice Garden, L.L.C.*, 2005 MT 115, ¶ 16, 327 Mont. 99, ¶ 16, 113 P.3d 275, ¶ 16. With regard to summary judgments, Rule 56(c), M.R.Civ.P., provides that

> [t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

5

¶11 We observe in this case that the District Court's order granting the School District summary judgment includes a section entitled "FINDINGS OF FACT," in which the court set forth the facts relevant to the issues raised by the parties in their briefs. We recently clarified however, that in a summary judgment proceeding

> the parties are not arguing over what happened or presenting conflicting evidence; they merely need to know which of them, under the uncontested facts, is entitled to prevail under the applicable law. In such a case, the district court judge need not weigh evidence, choose one disputed fact over another, or assess credibility of the witnesses.

*Cole*, ¶ 4. Thus, it is inappropriate for a district court to enter "findings of fact" when addressing a summary judgment motion. Rather, the court simply should set forth the undisputed facts relevant to the legal issues raised, as well as any disputed facts which may preclude entry of summary judgment. Here, however, our review of the record, the parties' briefs and the District Court's order reveals that the facts as "found" by the District Court are undisputed by the parties. Consequently, although the court erred in articulating the undisputed facts as "findings of fact," the error is harmless here.

DISCUSSION

¶12 Did the District Court err in granting summary judgment to the School District?

¶13 As noted above, the employment contract at issue in this case is entitled "Teacher Contract," states that Wurl was "a legally qualified and certified teacher under the School Laws and Regulations of Montana" and refers to Wurl throughout as "Teacher." The parties do not dispute that Wurl is not a legally qualified and certified teacher under Montana law. However, neither party contends that this inaccuracy or potential ambiguity in the

6

employment contract makes the contract void or unenforceable. Indeed, both parties' arguments are premised on the belief that the employment contract is a valid, binding contract. Moreover, our resolution of the issue before us, as set forth below, does not require a determination of whether Wurl is a "teacher" as defined by the employment contract, the MA or Montana law.

¶14 Wurl appears to argue alternative positions with regard to the relationship between her employment contract and the MA. She begins by arguing that whether the parties intended her employment to be covered by the MA is a question of fact which remains disputed and, therefore, should not have been decided by the District Court on summary judgment; in essence, this would constitute an argument that her contract is ambiguous. She also contends, however, that the language in her contract and the MA clearly provide that the entirety of the MA is incorporated by reference into her contract and, as a result, the District Court erred as a matter of law in concluding otherwise.

¶15 The School District responds that the question of whether Wurl's employment was governed by the MA involves interpretation of the contract, a question of law to be determined by the District Court on summary judgment. The School District further points out that factual issues relating to the intent of contracting parties arise only when a contract is ambiguous, and neither party here has asserted that the employment contract is ambiguous. Rather, according to the School District, each party has argued that the contract language is clear regarding whether the contract incorporated the MA by reference. Finally, the School

7

District contends the District Court correctly concluded that the MA did not apply to Wurl's employment contract.

¶16 The construction and interpretation of a written contract is a question of law. *King Resources, Inc. v. Oliver*, 2002 MT 301, ¶ 18, 313 Mont. 17, ¶ 18, 59 P.3d 1172, ¶ 18. Where a contract has been reduced to writing, the intention of the parties is to be ascertained, if possible, from the writing alone. Section 28-3-303, MCA; *State ex rel. Montana DOT v. Asbeck*, 2003 MT 337, ¶ 18, 318 Mont. 431, ¶ 18, 80 P.3d 1272, ¶ 18. Thus, where a contract's terms are clear and unambiguous, a court must apply the language as written. *Asbeck*, ¶ 18; *King Resources*, ¶ 21.

¶17 It is true that, when a contract term is ambiguous, interpretation of the term involves determining a question of fact regarding the intent of the parties to the contract. *See In re Marriage of Mease*, 2004 MT 59, ¶ 30, 320 Mont. 229, ¶ 30, 92 P.3d 1148, ¶ 30. The initial determination of whether an ambiguity exists in a contract, however, is a question of law for a court to determine. *King Resources*, ¶ 21. An ambiguity exists where the language of a contract, as a whole, reasonably is subject to two different interpretations. *Asbeck*, ¶ 18; *King Resources*, ¶ 21. However, the mere fact that the parties disagree as to the interpretation of a contract does not automatically create an ambiguity. *See*, *e.g.*, *Gilstrap v. June Eisele Warren Trust* (Wyo. 2005), 106 P.3d 858, 863; *Henderson v. State Farm Fire and Cas. Co.* (Mich. 1999), 596 N.W.2d 190, 194; *Pilling v. Nationwide Mut. Fire Ins. Co.* (W.Va. 1997), 500 S.E.2d 870, 872; *Terranova v. State Farm Mut. Auto. Ins. Co.* (Colo. 1990), 800 P.2d 58, 60.

¶18    Here, the parties disagree on whether the employment contract incorporated the entirety of the MA by reference. For the reasons discussed below, we conclude that the employment contract's language regarding the MA is clear and unambiguous and, therefore, involves a question of law rather than fact.

¶19    The employment contract first identifies the parties to the contract, provides that the contract covers the 2001-2002 school year, states the salary which Wurl will be paid and sets forth the manner in which the salary will be paid. It then states, in relevant part, as follows:

> IT IS UNDERSTOOD, that the salary stated above, based on the Negotiated Teacher's Salary Schedule currently adopted by the Board of Trustees, shall be considered as part of this Agreement, and the Teacher signing this Agreement assents to each provision of the said school salary schedule and other provisions as outlined in the Master Agreement.

Thus, the employment contract provides that, by signing the contract, Wurl assented to the provisions of the salary schedule as set forth in the MA, as well as all "other provisions" of the MA. The School District contends that, because the employment contract refers to the MA in a paragraph governing salary, only the salary-related provisions of the MA are incorporated into the contract. In other words, the School District asserts that the employment contract incorporated by reference the MA's salary schedule and "other provisions" of the MA directly related to an employee's advancement along the salary schedule, but did not incorporate the remaining MA provisions, such as those providing termination procedures.

¶20    "In the construction of an instrument, the office of the judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted

9

or to omit what has been inserted." Section 1-4-101, MCA. The employment contract clearly states that Wurl assented to "other provisions" of the MA. The phrase "other provisions" is not modified by any language limiting which MA provisions are included. To adopt the School District's interpretation of the employment contract would require us to ignore our proper role in interpreting contracts and insert language such as "salary-related" into the clear, unambiguous and inclusive phrase "other provisions" in the contract.

¶21 Thus, we conclude that the employment contract clearly and unambiguously incorporated the entirety of the MA--including the MA provisions relating to termination procedures--by reference. As a result, we further conclude that the District Court erred in granting summary judgment to the School District based on its conclusion that Wurl's employment with the School District was not governed by the MA. This conclusion, however, does not resolve the present case. The School District reiterates on appeal its alternative argument--raised in, and adopted by, the District Court--that, even if the employment contract incorporated the entirety of the MA by reference, the School District is still entitled to summary judgment because Wurl failed to initiate the MA grievance procedures, either timely or at all.

¶22 The School District notes that, although the MA provides employees with certain rights relating to their employment, the MA also imposes corresponding obligations on the employees. One such mandatory obligation is the requirement that an employee claiming a violation, misapplication or misinterpretation of the terms of the MA must pursue such a claim by initiating the MA grievance procedures which may culminate in binding arbitration.

10

The School District also correctly observes that an employee covered by a collective bargaining agreement--such as the MA--which contains grievance procedures, must exhaust the remedy afforded by the grievance procedures before bringing suit. *See*, *e.g.*, *MacKay v. State*, 2003 MT 274, ¶ 25, 317 Mont. 467, ¶ 25, 79 P.3d 236, ¶ 25 (citations omitted). Failure to exhaust such grievance procedures bars an employee from bringing suit in district court. *MacKay*, ¶ 28.

¶23     Wurl does not dispute that she did not initiate the MA grievance procedures regarding, or request arbitration of, the Board's decision not to renew her contract. Nor does she dispute that her failure to do so generally would bar her from bringing her claims via a complaint in district court. She contends, however, that the School District should be equitably estopped from arguing that her claims are barred as a result of her failure to file a grievance. Wurl asserts that, at the meeting in which the Board voted not to renew her employment contract, School District Superintendent Dan Haugen informed both Wurl and the Board that Wurl could not avail herself of the MA grievance procedures because the MA did not apply to her employment. She argues that, the School District's Superintendent having made the representation that Wurl could not utilize the grievance procedures, the School District should be estopped from now arguing that her claims are barred for failure to do so.

¶24     A party asserting equitable estoppel must establish the following six elements by clear and convincing evidence: 1) the existence of conduct, acts, language or silence constituting a representation or concealment of a material fact; 2) the fact must be known to the party to be

11

estopped at the time of the conduct or the circumstances be such that knowledge of the fact is necessarily imputed to that party; 3) the truth concerning the fact must be unknown to the party claiming estoppel at the time it was acted upon; 4) the conduct must be done with the intent, or at least the expectation, that it will be acted upon by the other party or under circumstances both natural and probable that it will be acted upon; 5) the conduct must be relied upon by the other party and, thus relying, the party must be led to act upon it; and 6) the other party must, in fact, act upon it in such a manner as to change the party's position for the worse. *Billings Post No. 1634 v. Dept. of Rev.* (1997), 284 Mont. 84, 90, 943 P.2d 517, 520. If the party claiming estoppel fails to establish even one of these elements, the doctrine of equitable estoppel cannot be invoked. *Elk Park Ranch, Inc. v. Park County* (1997), 282 Mont. 154, 166, 935 P.2d 1131, 1138.

¶25 Wurl relies on *Dagel v. City of Great Falls* (1991), 250 Mont. 224, 819 P.2d 186, in support of her argument that the School District should be estopped from arguing that her claims are barred by her failure to pursue the MA grievance procedures. In *Dagel*, we held that, where the City of Great Falls (City) rejected the plaintiff's grievance regarding her alleged unfair treatment by her supervisor on the basis that no collective bargaining agreement was in effect at the time the plaintiff resigned, the City was equitably estopped from later arguing that the plaintiff's claim under the WDEA was barred because she was covered by a collective bargaining agreement. *Dagel*, 250 Mont. at 236, 819 P.2d at 193-94. Wurl argues that the circumstances in *Dagel* are substantially similar to the present case and necessitate a conclusion that equitable estoppel applies here. The School District contends

that *Dagel* is factually distinguishable. We conclude that *Dagel* is of no assistance to Wurl here.

¶26    In *Dagel*, we stated the City's assertion that no collective bargaining agreement was in effect at the time the plaintiff resigned amounted to a representation of a material fact, thus establishing the first equitable estoppel element. *Dagel*, 250 Mont. at 236, 819 P.2d at 193. However, we made this statement without analyzing whether the assertion was legal or factual. Subsequent to *Dagel*, we clarified the application of the first element of equitable estoppel. In *Elk Park Ranch*, 282 Mont. at 166, 935 P.2d at 1138, we observed that we had "not had occasion before to clearly articulate the inapplicability of equitable estoppel to purely legal acts" and determined that "[b]ecause the imposition of equitable estoppel is premised on a misrepresentation of fact, it is inapplicable when . . . the conduct complained of consists solely of legal representations."

¶27    Here, the conduct on which Wurl bases her claim of equitable estoppel is the School District Superintendent's assertion that Wurl could not avail herself of the MA grievance procedures because the MA did not apply to her employment. The Superintendent's assertion regarding applicability of the MA was his legal interpretation that the MA was not applicable to Wurl's employment contract. As a result, the Superintendent's statement in this regard was a legal, rather than factual, representation. *Dagel* predated our decision in *Elk Park Ranch* clarifying the application of legal, as opposed to factual, representations to equitable estoppel issues. We conclude, therefore, that *Dagel* is not controlling in this instance. We further conclude that, because the Superintendent's statement regarding

applicability of the MA to Wurl's employment was a legal representation, Wurl has failed to establish the first element of equitable estoppel.

¶28    As stated above, if the party claiming estoppel fails to establish even one of the six elements, the doctrine of equitable estoppel cannot be invoked. *Elk Park Ranch,* 282 Mont. at 166, 935 P.2d at 1138. Because Wurl has failed to establish the first element of equitable estoppel, we conclude she has failed to establish that the School District should be estopped from arguing that her failure to initiate the MA grievance procedures bars her from raising her claims in district court. We further conclude, therefore, that the District Court did not err in its alternative determination that, if the MA applies to Wurl's employment, her failure to pursue the grievance procedures bars her from bringing her claims.

¶29    Finally, Wurl contends that the District Court erred in adopting its summary judgment order verbatim from a proposed order provided by the School District because the order ignored evidence she propounded in support of her position and failed to address her equitable estoppel argument. While we discourage a district court's verbatim adoption of a prevailing party's proposed order, such an action is not *per se* error. *See In re M.W.*, 2004 MT 301, ¶ 28, 323 Mont. 433, ¶ 28, 102 P.3d 6, ¶ 28. A district court may adopt a party's proposed order where it is sufficiently comprehensive and pertinent to the issues to provide a basis for the decision. *In re M.W.*, ¶ 28. Our review of the District Court's order in this case reveals that the order was sufficiently comprehensive to provide a basis for its decision and for our review on appeal, notwithstanding its failure to address Wurl's equitable estoppel argument. Moreover, our *de novo* standard of review of summary judgment decisions allows

14

us to review the record and make our own determinations regarding the existence of disputed issues of fact and entitlement to judgment as a matter of law. *See Cole*, ¶ 4.

¶30    While we have concluded above that the District Court erred in determining that the MA was not incorporated by reference in the employment contract, we also have concluded that the court correctly determined that Wurl's claims were barred by her failure to pursue the MA grievance procedures.  As a result, we hold that the District Court did not err in granting summary judgment to the School District.

¶31    Affirmed.

/S/ KARLA M. GRAY

We concur:

/S/ PATRICIA O. COTTER
/S/ JOHN WARNER
/S/ BRIAN MORRIS
/S/ JIM RICE