FILED

11/14/2016

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 16-0038

DA 16-0038

IN THE SUPREME COURT OF THE STATE OF MONTANA

2016 MT 287

---

GRIZZLY SECURITY ARMORED EXPRESS, INC.,
a Montana corporation,

        Plaintiff and Appellant,

    v.

BANCARD SERVICES, INC., a Montana
corporation, B&B LOUNGE, INC., a
South Dakota corporation, LELAND
RUZICKA, an individual resident of
South Dakota, and Does 1-2,

        Defendants and Appellees.

---

APPEAL FROM:    District Court of the Eleventh Judicial District,
                    In and For the County of Flathead, Cause No. DV 13-787(C)
                    Honorable Amy Eddy, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

                Bruce A. Fredrickson, Rocky Mountain Law Partners, PLLP, Kalispell,
                Montana

        For Appellees:

                Dean D. Chisholm, Chisholm & Chisholm, P.C., Columbia Falls, Montana

                Doug Scotti, Morrison & Frampton, PLLP, Whitefish, Montana

---

                        Submitted on Briefs:  August 31, 2016
                                    Decided:  November 14, 2016

Filed:

                                  _____
                                              Clerk

Justice Patricia Cotter delivered the Opinion of the Court.

¶1    Grizzly Security Armored Express, Inc. (Grizzly Security), filed suit against Bancard Services, Inc. (Bancard), and Leland Ruzicka and B&B Lounge, Inc. (collectively Ruzicka) relating to circumstances surrounding a data entry error that resulted in a substantial sum of money being deposited into the wrong bank account. Bancard and Ruzicka filed motions for summary judgment against Grizzly Security on their respective issues. The District Court determined that the claim against Ruzicka was timed barred due to the applicable statute of limitations and that the claims against Bancard failed for various reasons which we discuss herein, and awarded attorney's fees to Bancard based on the language of the contract between the two parties. Grizzly Security appeals. We affirm.

## ISSUES

¶2    Grizzly Security raises four issues on appeal, which we restate:

*1. Did the District Court err in granting summary judgment in favor of Leland Ruzicka and B&B Lounge, Inc.?*

*2. Did the District Court err in granting summary judgment in favor of Bancard Services, Inc.?*

*3. Did the District Court err in awarding attorney's fees to Bancard Services, Inc.?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶3    Grizzly Security owns a number of ATM machines at various locations in Montana. One of these ATMs is located at St. Mary's Lodge, outside of Glacier National Park. Bancard is a Montana corporation with operations involving owning, processing, and leasing automated teller machines. In 2004, Grizzly Security and Bancard entered

into a Processing Service and Maintenance Agreement (PSMA). Under the terms of the PSMA, Bancard agreed to provide processing services for Grizzly Security's ATMs. Bancard agreed to provide these services "through its agreement with First Interstate Bancorp (First Interstate), or such other processing services as [Bancorp], in its sole discretion, may select."

¶4 Pursuant to the language in the PSMA allowing Bancorp to delegate processing services to a third party, Grizzly Security entered into an ACH Authorization Agreement (ACH Agreement) with First Interstate in June of 2004. The ACH Agreement authorized First Interstate's electronic access into Grizzly Security's checking account in order to deposit funds relating to ATM settlement transactions. In terms of liability, the ACH Agreement provided that First Interstate would be responsible for the "loss of funds transferred into an account not designated in the ACH Authorization Agreement in force at the time of transfer."

¶5 In June of 2008, Bancard exercised its right under the PSMA to change the third party payment processor utilized to assist in processing ATM transactions at Grizzly Security's ATM in St. Mary's (among others) from First Interstate to Columbus Data Services (CDS). As part of the changeover process, Grizzly Security's account information had to be transferred from First Interstate to CDS. This transfer required that First Interstate enter the numbers or digits of various ATM terminal IDs. During the transfer, a transposition error resulted in Grizzly Security's ATM located at St. Mary's becoming misidentified as an ATM located in South Dakota and owned by Ruzicka. As a result of the error, amounts belonging to Grizzly Security and totaling approximately

$285,520 were deposited into Ruzicka's bank account between June 2008 and September 2009. Instead of notifying Bancard or CDS that he had received these funds in error, Ruzicka kept the money.

¶6      While the exact date is not apparent from the record in this case, Grizzly Security notified Bancard of the error in mid-2009. In turn, Bancard notified CDS of the error on September 9, 2009. Two days later, CDS notified Bancard that a technician had completed the modification Bancard had requested, updating and correcting the account file associated with Grizzly Security's St. Mary's ATM. After the error had been remedied, Bancard recovered approximately $250,000 of misplaced funds from Ruzicka between September 2010 and December 2010, subsequently returning the money to Grizzly Security.

¶7      At this point in the saga, the viewpoints of the parties regarding the subsequent series of events and circumstances vary dramatically. Bancard states that Grizzly Security contacted it in December 2011 regarding the remaining funds, totaling $35,520, which had not been recovered from Ruzicka. During this conversation, Bancard maintains that it informed Grizzly Security that it was under no obligation to recover the remaining funds from Ruzicka, that it had previously repeatedly informed Grizzly Security that sole liability for the missing funds lay with Ruzicka, and that Grizzly Security should seek the remainder of the funds from Ruzicka. Conspicuously absent from Bancard's version of the facts is any reference to events during, or circumstances surrounding, the time period between December 2010, when Bancard states it ceased

4

recovery efforts from Ruzicka, and December 2011, when Bancard states it informed Grizzly Security it should seek recovery from Ruzicka directly.

¶8     Grizzly Security's recitation of the circumstances and events surrounding the twelve-month period between December 2010 and December 2011 is strikingly different. Grizzly Security states that the missing funds were recovered on the following timeline: September 29, 2010–$50,000; October 9, 2010–$50,000; and, December 2, 2010–$150,000. Following the December 2010 payout, Grizzly Security alleges that Bancard instructed the employees it had tasked with recovery of the funds from Ruzicka to "keep quiet" about the $35,520 still outstanding, presumably hoping that Grizzly Security would not notice that these funds were still missing. In support of this allegation, Grizzly Security presented affidavits tending to show that this directive was the primary reason the two Bancard employees tasked with recovering the funds from Ruzicka, Vincent Sarff and Wendy Sarff, subsequently terminated their employment with Bancard, and that those employees believed Grizzly Security was entitled to know of the outstanding balance at that time. Grizzly Security alleges that it was only after Vincent and Wendy Sarff left Bancard's employ and informed Grizzly Security of the outstanding funds that Grizzly Security was notified not only that $35,520 had not been collected but that Bancard had ceased collection efforts against Ruzicka.

¶9     The factual timelines presented by the parties re-converge following December 2011. Shortly after the December 2011 conversation between Bancard and Grizzly Security, Bancard states that Grizzly Security terminated all its arrangements and contracts with Bancard. In response to the cessation of the business relationship, Bancard

5

notes that it filed two pending lawsuits against Grizzly Security, alleging that Grizzly Security breached the contract contained in the PSMA and tortiously interfered with PSMAs between Bancard and other entities.[1]

¶10    As noted above, there is a clear difference between both parties' recitation of the factual narrative in this case.  The District Court apparently noticed this discrepancy, stating, "For reasons unknown to the Court, [Grizzly Security] did not realize the outstanding balance had not been collected by Bancard.  Bancard has denied any obligation to do so, and it appears from the record before the Court they were hoping the whole matter would be forgotten."

¶11    In August of 2013, Grizzly Security filed a Complaint and Demand for Jury Trial in the Eleventh Judicial District Court, Flathead County, alleging that Bancard breached a contractual duty owed to Grizzly Security, that Bancard had engaged in actual or constructive fraud and/or had made negligent or intentional misrepresentations, that Bancard was negligent in its handling of Grizzly Security's account, and that Ruzicka and B&B Lounge were unjustly enriched by the erroneous deposits.

¶12    Bancard and Ruzicka filed motions for summary judgment against Grizzly Security, addressed in more detail below.  The District Court granted both motions and awarded Bancard attorney's fees under the PSMA.

---

[1] *Bancard Services, Inc. v. Christopher Gillette d/b/a Fatt Boys and Grizzly Security Armored Express, Inc.*, DV-13-462(B); *Bancard Services, Inc. v. Grizzly Security Armored Express, Inc.*, DV-14-1214(B).

**STANDARD OF REVIEW**

¶13    We review de novo a district court's grant or denial of summary judgment, applying the same criteria of M. R. Civ. P. 56 as a district court. *Pilgeram v. GreenPoint Mortg. Funding, Inc.*, 2013 MT 354, ¶ 9, 373 Mont. 1, 313 P.3d 839 (citation omitted). Under Rule 56(c), judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Roe v. City of Missoula*, 2009 MT 417, ¶ 14, 354 Mont. 1, 221 P.3d 1200 (citation omitted). "A material fact is a fact that involves the elements of the cause of action or defenses at issue to an extent that necessitates resolution of the issue by a trier of fact." *Roe*, ¶ 14 (citation omitted). "The party moving for summary judgment has the initial burden of establishing both the absence of genuine issues of material fact and entitlement to judgment as a matter of law." *Roe*, ¶ 14 (citation omitted). If the moving party meets this burden, then the burden "shifts to the nonmoving party to establish that a genuine issue of material fact does exist." *Roe*, ¶ 14 (citation omitted). If no genuine issues of material fact exist, the district court "then determines whether the moving party is entitled to judgment as a matter of law." *Roe*, ¶ 14 (citation omitted). Finally, "[o]ur de novo standard of review of summary judgment decision allows us to review the record and make our own determinations regarding the existence of disputed issues of fact and entitlement to judgment as a matter of law.'" *Chapman v. Maxwell*, 2014 MT 35, ¶ 12, 374 Mont. 12, 322 P.3d 1029 (quoting *Wurl v. Polson School District No. 23*, 2006 MT 8, ¶ 29, 330 Mont. 282, 127 P.3d 436).

7

**DISCUSSION**

¶14    *1.  Did the District Court err in granting summary judgment in favor of Leland Ruzicka and B&B Lounge, Inc.?*

¶15    Grizzly Security alleges that defendants B&B Lounge and Ruzicka were unjustly enriched by retaining the funds erroneously deposited into their account.  Ruzicka does not contest that funds were deposited into the account, nor does Ruzicka contest that he has failed to return the remainder of the funds.  It is undisputed that Grizzly Security notified Bancard of the missing funds in mid-2009.  While the exact date is unclear, the notification occurred sometime prior to September 2009, when Bancard subsequently notified CDS of the error.  Further, the record reflects that after CDS corrected the data entry error in September 2009, no erroneous deposits occurred.

¶16    In Montana, an action for unjust enrichment must be brought within three years. *Christian v. Atl. Richfield Co.*, 2015 MT 255, ¶ 14, 380 Mont. 495, 358 P.3d 131.  The period of limitation begins to run "when all elements of the claim exist or have occurred." *Christian*, ¶ 53; § 27-2-102(2), MCA.  Further, "[l]ack of knowledge of the claim or cause of action, or of its accrual, by the party to whom it has accrued does not postpone the beginning of the period of limitation."  Section 27-2-102(2), MCA.  The latest possible date on which the unjust enrichment claim against Ruzicka could have accrued was in September 2009, the latest date upon which an erroneous deposit could have been debited into Ruzicka's account.  Grizzly Security filed this lawsuit in August of 2013, well after the applicable three-year statute of limitations had run.

8

¶17    However, Grizzly Security argues that the exception this Court recognized in *N. Cheyenne Tribe v. Roman Catholic Church*, 2013 MT 24, 368 Mont. 330, 296 P.3d 450, where a relationship of trust and confidence between the parties tolls the statute of limitations until an adverse interest is asserted, should apply in the instant case. When addressing this matter below, the District Court noted that "the uncontradicted facts of this case are that at the time the elements of the claim of unjust enrichment arose, between May 2008 and September 2009, [Grizzly Security and Ruzicka] had utterly no relationship, business or otherwise, let alone the type of 'relationship of trust and confidence' relied upon by the Montana Supreme Court" in previous cases. We agree.

¶18    As noted by the District Court, we previously addressed the existence of a "relationship of trust and confidence," sufficient to toll the statute of limitations for an unjust enrichment claim in *N. Cheyenne Tribe*, in which the parties had interacted with each other for over 50 years. The Church had raised significant sums of money on behalf of the Tribe, and the Tribe had routinely demanded disbursements of those funds. *N. Cheyenne Tribe*, ¶¶ 15-17. Further, we noted that a commentator had suggested "[t]he Cheyenne people viewed the [Church] as a means to improve their material condition on the reservation and as an intermediary who might speak for the Cheyenne people to federal officials." *N. Cheyenne Tribe*, ¶ 15. In summary, the relationship of trust and confidence between the Tribe and the Church was based on a quantifiable relationship and a history of fiduciary obligations.

¶19    In the instant case, the record reflects that the only commonality between Grizzly Security and Ruzicka was the fact that they were both customers of Bancard. This fact

does not establish a relationship of trust and confidence. Therefore, the District Court did not err by dismissing Grizzly Security's unjust enrichment claim against Ruzicka as barred by the statute of limitations.

¶20   *2. Did the District Court err in granting summary judgment in favor of Bancard Services, Inc.?*

¶21   Grizzly Security argues that the District Court erred by either ignoring issues of material fact sufficient to preclude summary judgment in its analysis or impermissibly resolving issues of material fact in favor of Bancard in its analysis of each of the following issues: whether Bancard owed a contractual duty to Grizzly Security; whether Bancard owed a duty to Grizzly Security outside of its contractual obligations; and, whether Bancard's conduct constituted actual or constructive fraud and/or negligent or intentional misrepresentation. Further, Grizzly Security argues that the District Court misapplied the law in determining that Bancard did not breach the implied covenant of good faith and fair dealing. We address each theory in turn.

## BREACH OF A CONTRACTUAL DUTY

¶22   The District Court determined that no genuine issues of material fact precluded the conclusion that, as a matter of law, Bancard did not have an obligation arising out of the PSMA to monitor the deposits being made by First Interstate or CDS, or to guarantee recovery of the misplaced funds. In reaching this determination, the District Court held that there was no specific written contractual duty owed to Grizzly Security contained in the PSMA that had been breached. Further, the District Court determined that no oral contract, whereby Bancard allegedly agreed to ensure complete recovery of the funds on

10

behalf of Grizzly Security, existed between the parties. We address the existence of contractual duty under the PSMA and the existence of an oral contract separately.

### A.    Contractual Duty under the PSMA

¶23    Grizzly Security argues that the PSMA clause requiring Bancard to provide processing services to Grizzly Security through a processing bank and giving Bancard full discretion as to the identity of the processing bank implicitly required that a transition between processing banks occur in a reasonable manner that didn't jeopardize Grizzly Security. Grizzly Security argues that this implicit duty was breached when the account entry error occurred during the transition between First Interstate and CDS. Further, Grizzly Security argues that this conclusion is supported by testimony from Wendy Sarff, who stated she was the Bancard employee assigned to verify the account numbers during the transition from First Interstate to CDS.

¶24    Grizzly Security draws our attention to a clerical error by the District Court relating to this issue. In its order granting summary judgment, the District Court stated that Ms. Sarff's testimony indicated that CDS, not Bancard, was the entity that recognized and assumed responsibility to verify the account information that was being provided. This is incorrect. Ms. Sarff stated that, as an employee of Bancard, she was tasked with verifying the account information during the transfer and that, due to time constraints, she was instructed to verify only every fifteenth account number for accuracy. Ms. Sarff stated that, if she had been allowed to check each account number, the error would have been identified and corrected during the transfer.

11

¶25 In response, Bancard argues that the obligation to verify that any third-party processing is performed correctly cannot be imputed to Bancard without inserting new substantive language into the PSMA. Bancard argues that because the PSMA grants Bancard sole authority to change data processors (as illustrated by its decision to change servicers from First Interstate to CDS), it is shielded from liability for errors occurring during that transition by the clauses in the PSMA limiting liability in general. Bancard notes that the ACH Authorization Agreement between Grizzly Security and First Interstate "expressly contemplates [Grizzly Security] holding [First Interstate] accountable for loss of funds transferred to an account not designated . . . at the time of transfer." The subsequent agreement between Grizzly Security and CDS has a similar provision and required that Grizzly Security audit its own account and notify CDS within 30 days of the date on which funds go missing.

¶26 In response to Grizzly Security's statements involving the testimony of Ms. Sarff, Bancard argues that it had no legal obligation to verify the account numbers during the transition between First Interstate and CDS. Bancard supports this conclusion by stating that it did not have access to Grizzly Security's bank accounts and that it had no way of knowing if the funds had been correctly deposited until Grizzly Security notified it of the error.

¶27 The construction and interpretation of a contract is a question of a law. *State ex rel. Bullock v. Philip Morris, Inc.*, 2009 MT 261, ¶ 16, 352 Mont. 30, 217 P.3d 475. "When a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone if possible." Section 28-3-303, MCA. "If the language of a

12

contract is unambiguous—i.e., reasonably susceptible to only one construction—the court must apply the language as written." *State ex rel. Bullock*, ¶ 16 (citing *Mary J. Baker Revocable Trust v. Cenex Harvest States*, 2007 MT 159, ¶ 19, 338 Mont. 41, 164 P.3d 851).

¶28 Section 17 of the PSMA states, in relevant part,

> [BANCARD] SHALL IN NO EVENT BE RESPONSIBLE FOR ANY LOST PROFITS OR DIRECT, INCIDENTAL, CONSEQUENTIAL, SPECIAL, OR IN DIRECT [sic] DAMAGES THAT [GRIZZLY SECURITY] MAY INCUR. [BANCARD'S] SOLE LIABILITY TO [GRIZZLY SECURITY] HEREUNDER, EXCEPT AS OTHERWISE PROVIDED, SHALL BE TO REMEDY ANY BREACH IN A TIMELY MANNER. FURTHERMORE, BANCARD SERVICES INC. SHALL BE HELD HARMLESS FROM ANY LIABILITY CONCERNING [GRIZZLY SECURITY'S] PREVIOUS AGREEMENTS WITH ANY OTHER ENTITY, BUSINESS, OR ATM PROCESSOR.

The language of this provision and the language of the PSMA in general is unambiguous. Grizzly Security seeks the recovery of money that, it argues, Bancard is liable for misplacing. However, the language of § 17 precludes a determination that Bancard is liable, as it expressly disclaims responsibility for any lost profits or other damages incurred by Grizzly Security.

¶29 In summary, Grizzly Security cannot impute a duty to Bancard that is expressly contradicted by a provision in the written contract between the two parties. Were we to hold that Bancard was liable, it would force a conclusion that Bancard would be responsible for Grizzly Security's lost profits or other damages stemming from the erroneous banking transactions. This conclusion would render § 17 of the PSMA void. Further, while not dispositive of our determination here, we note that Grizzly Security's

13

contracts with both First Interstate and CDS contemplated that Grizzly Security would hold those parties liable for precisely the type of error that occurred in this case. For these reasons, we determine that the District Court did not err in granting summary judgment under the contract in favor of Bancard.

## B. Existence of an Oral Contract

¶30 As noted above, Grizzly Security also alleges that it entered into an oral contract with Bancard whereby Bancard agreed to ensure complete recovery on Grizzly Security's behalf. In granting summary judgment in favor of Bancard, the District Court determined that the testimony of Greg Harris, Grizzly Security's President, coupled with Bancard's denial of an oral contract, "satisfies this Court that there is no genuine issue of material fact that the parties did not enter into an oral contract which specifically conflicted with the terms and obligations of the written contract."

¶31 Bancard contends that Grizzly Security's position regarding the creation of an oral agreement is both "vague and otherwise heavily contradicted." Bancard argues that the fact it "received no consideration—nothing whatsoever—in exchange for this alleged promise to 'collect-or pay'" is evidence against the formation of an oral agreement. Further, Bancard states that the evidence offered by Grizzly Security is, at best, unclear, and that any collection efforts it undertook were voluntary and conducted while the PSMA was still in effect.

¶32 Grizzly Security argues the District Court erred by resolving issues of material fact in favor of Bancard, improperly making findings of fact, and weighing the evidence in favor of Bancard. Specifically, Grizzly Security argues that the District Court selectively

14

relied on the testimony of Mr. Harris, and failed to consider the parts of his testimony that directly evidenced an oral contract between the two parties. Further, Grizzly Security argues that the District Court ignored testimony by Vincent Sarff, which allegedly evidenced the existence of an oral contract.

¶33 In support of its argument, Grizzly Security directs this Court to the general rule that, "[w]here the existence of an oral contract is contested and the evidence is conflicting, the existence of a contract is a question for the trier of fact." *Como v. Rhines*, 198 Mont. 279, 284, 645 P.2d 948, 950-51 (1982) (citations omitted). However, as noted by the District Court, Montana law requires that "[a] contract in writing may be altered by a contract in writing or by an executed oral agreement, and not otherwise." Section 28-2-1602, MCA. "An executed oral agreement exists where the obligations of both parties have been fully performed, and nothing remains to be done by either party." *Morrow v. Bank of America, N.A.*, 2014 MT 117, ¶ 26, 375 Mont. 38, 324 P.3d 1167. "Full execution must occur on both sides of the agreement." *Richards v. JTL Group, Inc.*, 2009 MT 173, ¶ 20, 350 Mont. 516, 212 P.3d 264. "Performance by only one party is not sufficient." *Morrow*, ¶ 26. As articulated by Bancard, were an oral contract found to exist in this case, it would have been created while the PSMA was still in force. Therefore, because we determine that § 28-2-1602, MCA, applies, the threshold question is whether an executed oral agreement exists.

¶34 Initially, we note that it is undisputed that the obligations of the parties have not been fully performed in this case. Indeed, had the parties fully performed the obligations allegedly contained within the oral agreement, Bancard would have delivered the

15

remaining funds to Grizzly Security and this case would not be before the Court. Therefore, we are faced with a question of statutory interpretation: does § 28-2-1602, MCA, require full performance in order for an executed oral agreement to exist? We have addressed this question in previous cases, although with conflicting results. A review of our previous decisions on this issue is instructive.

¶35 In *Dalakow v. Geery*, 132 Mont. 457, 318 P.2d 253 (1957), we addressed a situation where the plaintiff had fully performed under the alleged oral modification of the contract, and the defendant had received a benefit not provided for in the written contract. *Dalakow*, 132 Mont. at 467, 318 P.2d at 259. We held that, under that factual scenario, justice and equity guided the conclusion that execution by only one party was sufficient to allow enforcement of the modification against the other party. *Dalakow*, 132 Mont. at 467, 318 P.2d at 259.

¶36 However, in *Winkel v. Family Health Care, P.C.*, 205 Mont. 40, 668 P.2d 208 (1983), a case with a similar factual narrative to the instant appeal, we limited this holding significantly. In *Winkel*, the issue before this Court was whether the plaintiff, Winkel, could take advantage of an alleged oral modification to an employment contract, promising a share of the profits from a business. *Winkel*, 205 Mont. at 45-46, 668 P.2d at 210-11. Defendant Vranish argued that Winkel was not entitled to a profit sharing bonus because the written employment contract did not provide for such a bonus and was never amended as a matter of law under § 28-2-1602, MCA. *Winkel*, 205 Mont. at 45, 668 P.2d at 210. Interpreting the requirements of the statute, we held that because "the oral agreement concerning [the] profit-sharing bonus was never performed . . . the oral

agreement was not executed." *Winkel*, 205 Mont. at 46, 668 P.2d at 211. In other words, because Vranish had never given Winkel the profit sharing bonus, the oral agreement was never performed and, therefore, the oral agreement was never executed and the written contract remained unaltered. *Winkel*, 205 Mont. at 46, 668 P.2d at 211.

¶37 The resulting rule from *Winkel*, that an oral agreement must be fully performed by both parties in order for it to be executed, is arguably harsh, but in line with the plain meaning of § 28-2-1602, MCA. Applied to the instant case, the result is clear. Even if we were to determine that the alleged oral agreement existed, Bancard did not fully perform. As noted above, if Bancard had fully performed, this case would not be before the court. Therefore, as Bancard has not fully performed, the oral agreement remains unexecuted and the original written contract between Grizzly Security and Bancard remains unaltered. Under this analysis, we hold that the District Court did not error in granting summary judgment in favor of Bancard on the existence of an oral agreement.

## IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

¶38 Grizzly Security also argues that the District Court erred by dismissing its claim involving breach of the implied covenant of good faith and fair dealing because of its determination that there was no contract to which the covenant attached and its failure to consider the honesty in fact prong of the covenant.

¶39 Under Montana law, "[e]very contract, regardless of type, contains an implied covenant of good faith and fair dealing. A breach of the covenant is a breach of the contract. Thus, breach of an express contractual term is not a prerequisite to breach of the implied covenant." *Masters Group Int'l, Inc. v. Comerica Bank*, 2015 MT 192, ¶ 67,

17

380 Mont. 1, 352 P.3d 1101 (quoting *McCoy v. First Citizens Bank*, 2006 MT 307, ¶ 21, 335 Mont. 1, 148 P.3d 677). "The conduct required by the implied covenant of good faith and fair dealing is honesty in fact and the observance of reasonable commercial standards of fair dealing in the trade." Section 28-1-211, MCA. We have interpreted this statute as allowing either dishonesty or commercially unreasonable conduct to implicate the covenant. *May v. ERA Landmark Real Estate of Bozeman*, 2000 MT 299, ¶ 49, 302 Mont. 326, 15 P.3d 1179. Where a party seeks to prove commercially unreasonable conduct, this Court has held that, in the absence of statutorily defined standards of conduct, expert testimony is required. *See May*, ¶¶ 46-48. Proving conduct that violates the honesty in fact requirement, however, does not require expert testimony. *May*, ¶ 49.

¶40 When determining issues involving the implied covenant of good faith and fair dealing, we have consistently held that the covenant is "a mutual promise that the contracting parties will not attempt, through dishonesty or abuse of discretion in performance, to deprive each other of *the benefits of the contract*." *Phelps v. Frampton*, 2007 MT 263, ¶ 38, 339 Mont. 330, 170 P.3d 474 (citing *Beaverhead Bar Supply v. Harrington*, 247 Mont. 117, 124, 805 P.2d 560, 564 (1991)) (emphasis in original). Further, we have held that evidence that the other party acted in bad faith is, by itself, insufficient to maintain a claim for breach of the covenant. *Phelps*, ¶ 39. We have required that a "claimant must also come forward with evidence sufficient to support the conclusion that as a result of the other party's action, the claimant was deprived of a benefit or a justified expectation under the contract." *Phelps*, ¶ 39. A determination of whether an expectation was justified under the contract "depends on the various

18

circumstances that surround the parties' relationship and thereby shape or give contour to the expectation in the first instance." *Phelps*, ¶ 39.

¶41 As we have determined that there was not an executed oral agreement modifying the underlying contract in this case, our case law requires that Grizzly Security present evidence sufficient to support the conclusion that, as a result of Bancard's actions, it was deprived of a benefit or justified expectation under the PSMA. Grizzly Security has not presented such evidence. The benefit that Grizzly Security implies exists in this case is that Bancard is required to recover any missing or misplaced funds on its behalf. Grizzly Security has not directed this Court to any clause of the contract that requires or confers such a benefit. Further, Grizzly Security has presented no evidence that forcing Bancard to recover these funds is a justified expectation under the contract. The circumstances surrounding the parties' relationship, specifically the subcontracts Bancard required Grizzly Security to sign with both First Interstate and CDS which explicitly state that those two entities would be liable under circumstances as present in this case, establish that Grizzly Security's expectation that Bancard would recover the funds or had a duty to recover the funds was not justified.

¶42 We therefore conclude that the District Court did not err in granting summary judgment to Bancard on Grizzly Security's claims for breach of the implied covenant of good faith and fair dealing.

### ACTUAL OR CONSTRUCTIVE FRAUD

¶43 Grizzly Security argues that the District Court erred in granting summary judgment to Bancard on Grizzly Security's claims of actual and/or constructive fraud by

19

improperly weighing the evidence in favor of Bancard and resolving issues of material fact in favor of Bancard. We address each theory in turn.

### A. Fraud

¶44 We have clearly defined the requirements a party must meet when claiming fraud:

> To survive a motion for summary judgment, a party alleging fraud must establish a prima facie case by providing evidence of the following elements:
>
> > 1. a representation;
> > 2. its falsity;
> > 3. its materiality;
> > 4. the speaker's knowledge of its falsity or ignorance of its truth;
> > 5. the speaker's intent that it should be acted upon by the person and in the manner reasonably contemplated;
> > 6. the hearer's ignorance of its falsity;
> > 7. the hearer's reliance upon its truth;
> > 8. the right of the hearer to rely upon it; and
> > 9. the hearer's consequent and proximate injury or damage.

*May*, ¶ 21.

¶45 After reviewing the record, we determine that Grizzly Security has not met its burden of establishing a prima facie case of fraud. In its complaint Grizzly Security states in conclusory fashion: "Bancard's actions have resulted in damages to Grizzly all in an amount to be proven at trial." Further, Grizzly Security's Reply to Bancard's Motion for Summary Judgment does not state what injury or damage occurred as a result of the alleged fraudulent statement. Liberally construing the argument on appeal, it appears Grizzly Security would argue that its inability to recover the remaining funds from Ruzicka is the consequent and proximate damage of Bancard's alleged fraudulent statement. We disagree.

¶46 The fraud Grizzly Security claims is Bancard's alleged concealment of the fact that it would not continue to pursue recovery of the remaining funds from Ruzicka. It follows, then, that the injury to Grizzly Security must have occurred between the time of the alleged fraud, December 2010 (at the earliest), and the time the alleged fraud was discovered, December 2011. Grizzly Security has not described any injury, apart from the fact that a sum remains unrecovered from Ruzicka, that occurred as a direct result of this alleged concealment. Bancard's alleged concealment was not the cause of the funds being deposited into Ruzicka's account. Bancard's alleged concealment did not prevent Grizzly Security from seeking the funds on its own accord. Notably, Grizzly Security has not argued that Bancard's alleged concealment prevented its recovery against Ruzicka. Therefore, under these facts, we find that Grizzly Security has not provided evidence that Bancard's alleged concealment, even if we assume it occurred, has injured or caused damages to Grizzly Security.

¶47 After a review of the record and under our analysis above, we determine that the District Court did not err in granting summary judgment to Bancard on Grizzly Security's claims of fraud.

### B. Constructive Fraud[2]

¶48 Grizzly Security's arguments involving constructive fraud are similar to those it presented in support of its arguments for actual fraud: the District Court improperly weighed the evidence when granting summary judgment in favor of Bancard. In its Order and Rationale on Summary Judgment, the District Court again relied on its determination that "there is no evidence that either Shaun or Russell Pandina, or Vincent Sarff, affirmatively stated to Greg Harris that Bancard would either obtain full reimbursement from [Ruzicka] or that Bancard would pay whatever [Ruzicka] did not refund," when granting summary judgment in favor of Bancard.

¶49 In Montana, a claim for constructive fraud "merely requires the establishment of a duty." *Morrow*, ¶ 63 (quoting *Mattingly*, 285 Mont. at 218, 947 P.2d at 72). We have held that "[u]nder certain special circumstances, neither a confidential nor a fiduciary relationship is necessary for a finding of constructive fraud." *Mattingly*, 285 Mont. at 219, 947 P.2d at 72 (internal quotation marks omitted). In defining these "special circumstances," we have stated that "[a] duty sufficient to support a finding of constructive fraud 'may exist where one party has acted to mislead the other in some way.'" *Morrow*, ¶ 64 (quoting *Mattingly*, 285 Mont. at 219, 947 P.2d at 72). A review

---

[2] We note briefly that, while the constructive fraud statute cited by both the District Court and Grizzly Security is located within the subsection entitled "Circumstances Which Affect Validity of Apparent Consent" and is therefore generally applicable only in cases involving apparent consent to contract, we have previously held that constructive fraud in particular, within the meaning of § 28-2-406, MCA, allows a plaintiff to seek damages independent of a contract action. *Morrow*, ¶ 62; *Mattingly v. First Bank of Lincoln*, 285 Mont. 209, 218-20, 947 P.2d 66, 71-73 (1997); *Lee v. Armstrong*, 244 Mont. 289, 295, 798 P.2d 84, 88 (1990).

of our case law applying this rule is instructive as to why it is not implicated in the instant case.

¶50    In *McGregor v. Mommer*, 220 Mont. 98, 714 P.2d 536 (1986), we summarized one such special circumstance as existing "[w]here sellers, by words or conduct, create a false impression concerning serious impairments or other important matters and subsequently fail to disclose the relevant factors." *McGregor*, 220 Mont. at 109, 714 P.2d at 543 (citing *Moschelle v. Hulse*, 190 Mont. 532, 538-39, 622 P.2d 155, 159 (1980)). In *McJunkin v. Kaufman & Broad Home Systems, Inc.*, 229 Mont. 432, 748 P.2d 910 (1987), we noted that another special circumstance could exist between parties to a commercial transaction relating to the purchase of a mobile home from a manufacturer/seller, holding "defendants had a duty to refrain from intentionally or negligently creating a false impression by words or conduct." *McJunkin*, 299 Mont. at 435-436, 439, 748 P.2d at 912-13, 915. In *Mattingly v. First Bank of Lincoln*, we determined that the requisite special circumstance existed where the seller of a gas station made misleading statements about the condition or value of the property to the subsequent purchaser. *Mattingly*, 285 Mont. at 219-220, 947 P.2d at 72-73. Further, in *H-D Irrigating, Inc. v. Kimble Props., Inc.*, 2000 MT 212, 301 Mont. 34, 8 P.3d 95, we held that the special circumstance requirement was met where a seller created a false impression relating to the effectiveness of equipment he was selling. *H-D Irrigating, Inc.*, ¶¶ 25-30. Finally, and perhaps most instructively, we recently addressed this issue in *Morrow v. Bank of America, N.A.*, where we stated "[c]onstructive fraud is a breach of duty, which without fraudulent intent, creates an advantage for the breaching party by

23

misleading another person to that person's prejudice." *Morrow*, ¶ 62. Our statement in *Morrow* illuminates what has been implicit in our previous decisions involving constructive fraud: the allegedly fraudulent party must gain some advantage over a party to that party's prejudice.

¶51 Turning to the instant case, we have not identified a duty owed by Bancard to Grizzly Security that would require the full repayment of the missing funds or require that Bancard continue to seek the funds from Ruzicka. In the absence of such an articulable duty, we hold that Grizzly Security may not take advantage of the general rule relating to constructive fraud allowing special circumstances to alleviate the duty requirement. As a review of our case law indicates, we have yet to expand this duty outside of the circumstances where one party gains an advantage over the other party to that party's prejudice. Grizzly Security does not allege or identify any benefit gained by Bancard through its alleged misrepresentations. Further, Grizzly Security does not indicate what prejudice it faced as a result of Bancard's alleged misrepresentations. Therefore, the exception to the general rule that constructive fraud requires a duty is inapplicable in this case.

¶52 Accordingly, under the above analysis, we determine that the District Court did not err in granting summary judgment to Bancard on Grizzly Security's claim of constructive fraud.

**NEGLIGENT OR INTENTIONAL MISREPRESENTATION**

¶53 Grizzly Security argues that the District Court erred in granting summary judgment in favor of Bancard on its claim of negligent or intentional misrepresentation

24

because issues of material fact exist. In granting summary judgment, the District Court determined the testimony provided by Russell Pandina, the principal officer and owner of Bancard, coupled with Grizzly Security's failure "to establish, by admissible evidence" that Bancard, through any of its representatives, made the representation to Grizzly Security that Bancard would guarantee return of the missing funds or reimburse Grizzly Security for any funds that were not returned, was dispositive.

¶54 We have adopted the following definition of negligent misrepresentation:

> One who, in the course of his business, profession or employment, or in any other transaction to which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

*Morrow*, ¶ 45 (citations omitted). This definition has been expanded to require that the following elements be met:

> a) the defendant made a representation as to a past or existing material fact;
> b) the representation must have been untrue;
> c) regardless of its actual belief, the defendant must have made the representations without any reasonable ground for believing it [sic] to be true;
> d) the representation must have been made with the intent to induce the plaintiff to rely on it; [and]
> e) the plaintiff, as a result of its reliance, must sustain damage.

*Morrow*, ¶ 45 (citations omitted).

¶55 Grizzly Security argues that Bancard recognized its obligation to collect when it proceeded to recover funds from Ruzicka and that this constitutes a representation which, after Bancard later asserted that it did not have an obligation to recover funds, was false or made without reasonable grounds for believing it was true. We disagree, but find it

unnecessary to delve into the merits of that argument in light of the fact that Grizzly Security has failed to demonstrate the damage it sustained as a result of its purported reliance on these alleged misrepresentations. We reiterate that, while we recognize that a portion of the misplaced funds remain outstanding, those funds were not misplaced as a result of Bancard's alleged misrepresentation, and Grizzly Security has not demonstrated how that representation, if it did occur, caused it to be unable to recover those funds from Ruzicka or pursuant to its ACH Agreement with CDS. Therefore, under the above analysis, we determine that the District Court did not err in granting summary judgment to Bancard on Grizzly Security's claims for negligent or intentional misrepresentation.

## BREACH OF A GENERAL DUTY

¶56    In its reply brief to Bancard's motion for summary judgment, Grizzly Security argued that, "[o]nce [Bancard] had made its representations to Mr. Harris that it would collect the funds owing . . . [Bancard's] duty was established and it had an obligation to use reasonable efforts to see it through." In addressing this argument, the District Court construed the duty to collect outstanding funds as an offshoot of the contractual claims and subsequently dismissed it. However, the District Court noted that the claim involving a duty to deposit funds into the correct account was separate and distinct from the contractual duty analysis. Because Grizzly Security takes issue with both determinations on appeal, we address each issue.

¶57    A cause of action for negligence requires four elements: duty, a breach of that duty, causation, and damages. *Henricksen v. State*, 2004 MT 20, ¶ 20, 319 Mont. 307, 84 P.3d 38 (citing *Wiley v. City of Glendive*, 272 Mont. 213, 217, 900 P.2d 310, 312

26

(1995)). "The existence of a legal duty is a question of law to be determined by the court." *Fisher v. Swift Transportation Co.*, 2008 MT 105, ¶ 17, 342 Mont. 335, 181 P.3d 601 (citations omitted). "In analyzing whether a duty exists, we consider whether the imposition of that duty comports with public policy, and whether the defendant could have foreseen that his conduct could have resulted in an injury to the plaintiff." *Fisher*, ¶ 17 (citing *Henrickson*, ¶ 21).

¶58     On appeal, Grizzly Security simply restates, as a broad proposition, that "Bancard had a duty to finish what it started and had a further duty to inform Grizzly, up front, if it did not believe it had a duty to collect." Grizzly Security cites no legal authority for the preposition that where a party to a contract voluntarily performs an act outside of that contract, it assumes a duty to complete performance of that act to the satisfaction of the other party. Further, the scope of this general duty alleged by Grizzly Security, if it were to exist, is necessarily limited by the other claims raised by Grizzly Security in this case. To illustrate, as stated above, we hold that Bancard has not violated either a contractual duty owed to Grizzly Security, or the duty required by the implied covenant of good faith and fair dealing. Further, we have held that Bancard did not engage in actual or constructive fraud or make negligent or intentional misrepresentations. Therefore, any general duty that would exist here must exist outside of the scope of these issues we have already addressed. As a matter of public policy, we are not inclined to find that a company, like Bancard, has violated some general duty and opened itself up to liability for endeavoring to retrieve funds it was under no identifiable obligation to retrieve.

27

¶59 Finally, Grizzly Security argues that Bancard had a "duty to inform [Grizzly Security], up front, if it did not believe it had a duty to collect." Grizzly Security did not raise the question of whether Bancard had a duty to so inform Grizzly Security prior to this appeal. Our rule with regard to arguments presented for the first time on appeal is well established. We will generally "not address either an issue raised for the first time on appeal or a party's change in legal theory. The basis for the general rule is that it is fundamentally unfair to fault the trial court for failing to rule correctly on an issue it was never given the opportunity to consider." *Becker v. Rosebud Operating Servs., Inc.*, 2008 MT 285, ¶ 17 345 Mont. 368, 191 P.3d 435 (quoting *Unified Industries, Inc., v. Easley*, 1998 MT 145, ¶ 15, 289 Mont. 255, 961 P.2d 100) (internal citations and quotations omitted). Therefore, we hold that the District Court did not err in granting summary judgment to Bancard on Grizzly Security's claim of general negligence.

¶60 *3. Did the District Court err in awarding attorney's fees to Bancard Services, Inc.?*

¶61 The District Court awarded attorney's fees to Bancard in the amount of $21,500, and costs in the amount of $171, for a total judgment of $21,671. Further, the District Court held that Bancard would be entitled to an award of attorney's fees incurred during the instant proceeding. On appeal, Grizzly Security argues solely that, because "material issues of fact exist with respect to the contract claims, this Court should reverse the District Court's fee award pending the jury's determination of all issues in this action." As noted above, we affirm the District Court's grant of summary judgment in this case. Therefore, because § 15 of the PSMA expressly states that the prevailing party is entitled

to attorney's fees and costs for any action instituted to enforce or interpret the terms of the PSMA, we affirm the District Court's award of attorney's fees and costs.

## CONCLUSION

¶62 Based on the foregoing, the District Court did not err in granting summary judgment to Bancard and Ruzicka, or in awarding attorney's fees to Bancard under the terms of the PSMA. We remand to the District Court to determine the attorney's fees incurred during this appeal. Affirmed.

/S/ PATRICIA COTTER

We Concur:

/S/ MIKE McGRATH
/S/ BETH BAKER
/S/ JAMES JEREMIAH SHEA

Justice Laurie McKinnon, specially concurring.

¶63 While I agree that the District Court's order resolving the parties' motions for summary judgment should be affirmed, I would do so along the more succinctly stated analysis provided in the District Court's order. In my opinion, the Court's analysis is excessively long, far-reaching, and unnecessary. Such an analysis, while not immediately problematic for the case at hand, may potentially be cumbersome for the Court to deal with in the future. Further, for reasons I have previously provided in my dissent in *Morrow v. Bank of America, N.A.*, I disagree with the Court's analysis regarding constructive fraud. *See* ¶¶ 72-99 (McKinnon, J., dissenting).

/S/ LAURIE McKINNON