No. 81-405

IN THE SUPREME COURT OF THE STATE OF MONTANA

1982

---

GARY COMO,

Plaintiff and Respondent,

vs.

JIM RHINES and SOUND WEST, INC.,

Defendants and Appellants.

---

Appeal from: District Court of the Fourth Judicial District, In and for the County of Missoula Honorable Jack L. Green, Judge presiding.

Counsel of Record:

For Appellants:

Datsopoulos, MacDonald & Lind, Missoula, Montana

For Respondent:

Hirst, Dostal & Withrow, Missoula, Montana

---

Submitted on briefs: February 11, 1982

Decided: MAY 27 1982

Filed: [illegible]

Thomas J. Kearney

Clerk

Mr. Justice Gene B. Daly delivered the Opinion of the Court.

This is an appeal from a judgment issued by the District Court of the Fourth Judicial District, Missoula County, in which the District Court found that appellants breached an employment contract with respondent. The District Court awarded damages to respondent against both appellants in the amount of $3,754, including $1,000 for one month's salary, $1,754 for travel and moving expenses, and a penalty of $1,000 as provided by section 39-3-206, MCA. Respondent was also awarded reasonable attorney fees and costs under section 39-3-214, MCA.

Appellant, Jim Rhines, is president and a stockholder of Sound West, Inc. (Sound West). Sound West owns a chain of stores, one in Missoula, Montana.

Respondent, Gary Como, has a background in business and accounting. In 1964, he received a college degree in business administration with a minor in accounting. He has had about ten years of experience as an accountant and worked with a computer for two years of that time. From January 1977 to March 1978, respondent worked as a manager of a family restaurant in St. Paul, Minnesota.

Desiring to find work in western Montana, respondent contacted several employment agencies in Missoula, Montana. On April 18, 1978, an employment agency notified respondent that Jim Rhines at Sound West was looking for someone with experience in accounting and computer programming.

Respondent called Rhines. They briefly discussed respondent's qualifications and set a date for an interview in Missoula.

Respondent traveled to Missoula by train and met with

Rhines on April 26, 1978. The District Court found that at the first interview Rhines told respondent that he wanted an accountant who could use an IBM computer to handle inventory, accounts payable and bank accounts.

Rhines claims that, in fact, he wished to hire a computer programmer, not an accountant. Rhines admits, however, that he never told respondent this.

At the first interview, respondent's qualifications were discussed. He met with Sound West's accountant, Al Hawley, discussed the accounting system and was shown the computer printouts of the accounting programs used by Sound West. He was told by Rhines to return the next day.

At the second interview, respondent claims, and the District Court found, that Rhines told respondent that he would like to take him on. Compensation, benefits, and duties of the job were then discussed and, according to the findings of the District Court, agreed upon.

Respondent made notes of the terms of his employment: he would be paid $1,000 per month for two months; then $1,200 per month, and $1,500 per month sometime in the fall. Respondent would work five days a week unless more were necessary. He would have six days of paid vacation.

The District Court concluded that, as part of this agreement, respondent's moving expenses as well as expenses for his interview trip would be reimbursed by Jim Rhines and Sound West. The District Court also found that Rhines agreed respondent would not have to move from St. Paul until June 5, so his children could finish school. Respondent would then start work as soon as he was settled.

On April 28, 1978, respondent went to the Missoula

Job Service and completed an interstate wage claim. On the form, respondent stated that on April 26 he had been hired by Sound West as an accountant with a starting date of approximately June 19, 1978. He also noted that Sound West was paying for the move.

In early June respondent rented a truck and moved his family and their belongings to Missoula. On June 9, 1978, respondent went to the Sound West store and told Rhines that his housing arrangements had not worked out and he would not be able to begin work for two weeks. Respondent testified, and the District Court found, that Rhines advised respondent to do what he had to do to settle in and then report for work later in the month.

On or about June 21, 1978, respondent returned to the Sound West store and requested a date to start work. Rhines sent respondent to Sound West's accountant. The accountant did not give a specific date for respondent to start work and said he would contact respondent the following week.

Respondent continued to call and personally go to the Sound West store to set a starting date. Rhines was non-committal. Respondent gave Rhines a list of his moving expenses, but Rhines refused to pay them. Finally, on or about June 30, 1978, Rhines told respondent he did not have a job at Sound West.

Respondent then began looking for other work in Missoula. He received temporary work in January 1979. In March 1979 he received permanent employment as an accountant with the University of Montana, where he remains employed.

The District Court concluded that under the above facts Jim Rhines, as the president and manager of Sound

West, offered employment to respondent with express terms and respondent accepted the offer. The District Court then concluded that Rhines and Sound West, Inc., breached this contract by failing to pay salary and benefits, and failing to allow respondent to perform his employment.

The District Court concluded that respondent had been hired on a month-to-month basis and awarded respondent $1,000 in one month's salary; $1,754 in moving expenses were also awarded as part of the employment contract.

Under section 39-3-206, MCA, the District Court found that Rhines and Sound West also owed $1,000 as a penalty. Finally, under section 39-3-214, MCA, the District Court awarded respondent a reasonable attorney fee and costs. Both Rhines and Sound West were held liable for the judgment.

Appellants raise three issues:

1. Is there substantial evidence to support the District Court's finding that respondent had a contract of employment with Sound West, Inc.?

2. Did the District Court err by applying sections 39-3-206, MCA, and 39-3-214, MCA, to respondent's breach of contract action?

3. Did the District Court err by holding appellant Jim Rhines liable for respondent's damages?

The District Court's judgment is affirmed to the extent that a contract was agreed upon and breached and that Rhines is personally liable for damages resulting from the breach. The case is remanded, however, for a redetermination of damages.

Appellants contend under the first issue that the

statement "we would like to take you on" is not definite or certain and does not constitute an offer. They claim that Sound West had an opening for a computer programmer only. Lastly, Rhines claims he told the respondent that he would be hired in June 1978 only if he were needed.

Where the existence of an oral contract is contested and the evidence is conflicting, the existence of the contract is a question for the trier of fact. Keil v. Glacier Park, Inc. (1980), ____ Mont. _____, 614 P.2d 502, 505, 37 St.Rep. 1151, 1154. The credibility of witnesses and the weight given their testimony are matters exclusively within the province of the District Court in a nonjury case. Harris v. Harris (1980), ___ Mont. ___, 616 P.2d 1099, 1102, 37 St.Rep. 1696, 1699. This Court will not disturb a judgment on appeal where substantial evidence to support the judgment appears on the record. See, Keil, 614 P.2d at 505, and cases cited therein.

Here, the evidence supports the District Court's conclusion that an agreement was reached between respondent and Rhines. The District Court was in the best position to weigh the credibility of the testimony and it chose to believe respondent. Respondent's actions were totally consistent with those of a person who, in good faith, thought he had a job. He took notes of the terms of his employment. He filled out a Job Service form stating that he had a job as an accountant at Sound West. He moved himself and his family to Missoula at a great expense.

Most importantly, however, are the admitted actions of Rhines and Sound West's accountant, Al Hawley. When respondent went to the Sound West store in early June,

Rhines was totally noncommittal. He did not tell respondent at that time he did not have a job. Instead, Rhines referred respondent to Hawley, who testified that he remembered that the conversation took place but could not remember what was said. Respondent's uncontradicted testimony is that he asked Hawley about a starting date and Hawley asked him to return later.

The above facts amply support the District Court's conclusion that a contract was entered into between respondent and Rhines.

Appellants contend in their second issue that the District Court erred by applying the statutory provisions found in Title 39, Chapter 3, Part 2, of the Montana Code Annotated. Appellants' contention is well-taken.

In section 39-3-201, MCA, "employ," "employee," "employer" and "wages" are defined for this part:

> "(2) 'Employ' means permit or suffer to work.
>
> "(3) 'Employee' includes <u>any person who works for another for hire</u>.
>
> "(4) 'Employer' includes any individual, partnership, association, corporation, business trust, legal respresentative, or any organized group of persons acting directly or indirectly in the interest of an employer in relation to an employee but shall not include the United States.
>
> "(5) 'Wages' includes any money due an employee from the employer or employers, whether to be paid by the hour, day, week, semimonthly, monthly, or yearly and shall include bonus, piecework, tips, and gratuities of any kind." (Emphasis added.)

Respondent was not an employee within the meaning of the statutes. He never actually performed work for Sound West.

Further, the general provision of section 39-3-

204(1), MCA, provides:

> "Every employer of labor in the state of Montana shall pay to each employee the wages earned by such employee . . . and no person for whom labor has been performed may withhold from any employee any wages earned or unpaid for a longer period than 10 business days after the same are due . . ."

Here, respondent neither earned, nor performed, any work for Sound West. Respondent, by definition, does not come under the protections of these sections, including section 39-3-206, MCA, which permits the imposition of a penalty and section 39-3-214, MCA, which allows the award of a reasonable attorney fee and costs.

Further, respondent's position is not supported by the policy underlying the wage claim statutes. The Oregon Supreme Court has stated:

> "The policy of the [wage claim] statute is to aid an employe in the prompt collection of compensation due him and to discourage an employer from using a position of economic superiority as a lever to dissuade an employe from promptly collecting his agreed upon compensation. . ." State ex rel. Nilsen v. Oregon State Motor Assoc. (1967), 248 Or. 133, 432 P.2d 512, 515.

The District Court erred, therefore, by imposing a $1,000 penalty under section 39-3-206, MCA, and awarding attorney fees and costs under section 39-3-214, MCA.

A redetermination of damages must be made by the District Court. In redetermining damages, the District Court should be guided by the general rule for damages resulting from a breach of contract. This general rule is found in section 27-1-311, MCA, which provides:

> "For the breach of an obligation arising from contract, the measure of damages, except when otherwise expressly provided by this code, is the amount which will compensate the party aggrieved for all the detriment which was proximately caused thereby or in the ordinary

> course of things would be likely to result therefrom. Damages which are not clearly ascertainable in both their nature and origin cannot be recovered for a breach of contract."

In construing the above section, this Court has emphasized that its purpose is to compensate an aggrieved party for the loss he has sustained, and that the nonbreaching party should receive a sum which will give him an economic status identical to that which he would have enjoyed had the contract been performed. Wyatt v. School District No. 104, Fergus County (1966), 148 Mont. 83, 89, 417 P.2d 221, 224; and see also, Laas v. Montana State Highway Commission (1971), 157 Mont. 121, 483 P.2d 699; and Whitney v. Bails (1977), 172 Mont. 121, 560 P.2d 1344. We acknowledged in Wyatt that the measure of damages for breach of an employment contract by an employer is prima facie the sum stipulated to be paid for the services. More importantly, however, we also noted that other expenses, such as those incurred while seeking alternative employment, may also be allowable if such activity is considered the natural consequence of the breach. Wyatt, 417 P.2d at 224-225.

Appellants' last contention is that the District Court erred by holding Rhines personally liable for respondent's damages. The District Court concluded as a matter of law that "Jim Rhines as the president and manager of Sound West, Inc., did offer employment to Gary Como for an accounting position with express terms." (Conclusion of Law No. 2.) The District Court then went on to conclude that Jim Rhines and Sound West, Inc., breached the employment contract and that both Rhines and Sound West were liable for the damages arising out of this breach.

This Court has recognized the general rule that an agent is not personally liable on a contract entered into by him on behalf of his principal if it appears, in fact, that he disclosed the identity of his principal and made the engagement for him. Farr v. Stein (1918), 54 Mont. 529, 172 P. 135; Budget Ins. & Finance v. Leighty (1980), ____ Mont. ____, 607 P.2d 1125, 37 St.Rep. 411. In Farr, this Court also recognized that the existence of the agency must be disclosed in appropriate terms, including the name of the principal for whom the agent is acting. Farr, 172 P. at 136. Moreover, merely because the agent, in making the contract for his principal, uses the trade name under which his principal transacts business is not of itself a sufficient identification of the principal to protect the agent from liability. Myers-Leiber Sign Co. v. Weirich (1966), 2 Ariz.App. 534, 410 P.2d 491.

This general rule of agency also applies to the corporate setting:

> "'The rule that where an agent enters into a contract in his own name for an undisclosed principal, the other party to the contract may hold the agent personally liable, applies equally well to corporate officers or agents. It has been held that the managing officer of a corporation, even though acting for the company, becomes liable as a principal where he deals with one ignorant of the company's existence and of his relation to it, and fails to inform the latter of the facts.' 3 Fletcher's Cyclopedia on Corporations, §1120, p. 762 (1965)." McCluskey Commissary, Inc. v. Sullivan (1974), 96 Idaho 91, 524 P.2d 1063, 1065.

Here, the record does not indicate that Rhines told respondent he would be working for Sound West, Inc. In fact, this lawsuit was initiated by respondent against "Jim Rhines, d/b/a (doing business as) Sound West." While the

agency was disclosed during the course of this litigation, the disclosure of the principal after the contract is executed will not relieve the agent from liability. Myers-Leiber Sign Co., supra, 410 P.2d at 493.

In the absence of a showing by appellants that respondent understood Rhines was acting as an agent for the corporation, Sound West, Inc., and not as an individual doing business as Sound West, it cannot be said the District Court erred by holding Rhines personally liable on the contract.

We therefore affirm the District Court's conclusion that appellants breached an employment contract with respondent. We remand, however, for a redetermination of damages in accordance with this opinion.

Justice

We concur:

Chief Justice

Justices

I would affirm the District Court.

Justice