DA 13-0455

IN THE SUPREME COURT OF THE STATE OF MONTANA

2014 MT 94

EMPIRE OFFICE MACHINES, INC.,
a Montana Corporation,

        Plaintiff and Appellant,

   v.

ASPEN TRAILS ASSOCIATES LLC d/b/a
WINDERMERE REAL ESTATE - HELENA
AND JOSH AHMANN,

        Defendants,

KEVIN DEMARAY,

        Defendant and Appellee.

| APPEAL FROM: | District Court of the First Judicial District, In and For the County of Lewis and Clark, Cause No. DDV 2011-744 Honorable James P. Reynolds, Presiding Judge |
|---|---|

COUNSEL OF RECORD:

        For Appellant:

            Palmer A. Hoovestal, Hoovestal Law Firm, PLLC, Helena, Montana

        For Appellee:

            Scott Howard Clement, Smith Law Firm, P.C., Helena, Montana

            Submitted on Briefs: February 26, 2014
                      Decided: April 8, 2014

Filed:

_____
                Clerk

Justice Michael E Wheat delivered the Opinion of the Court.

¶1      Empire Office Machines, Inc., (Empire) appeals from the Order of the First Judicial District Court, Lewis and Clark County, granting Kevin Demaray's (Demaray) Motion for Summary Judgment.  We affirm.

## ISSUE

¶2      We review the following issue:

*Did the District Court err in granting Demaray's motion for summary judgment on the basis that he was not personally liable under a contract, when the contract's signature line did not identify that he was signing as an agent for an LLC?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶3      Aspen Trails Associates, LLC (Aspen), was a development company that operated under the business name Windermere Real Estate—Helena (Windermere).  Aspen owned a franchise to sell real estate under the Windermere business name.  Demaray is the majority member of Aspen.

¶4      Aspen, d/b/a Windermere, entered into two contracts with Empire for the lease of copy machines.  The first, effective March 10, 2006, was for a Lanier LD335C Color copy machine.  The Equipment Lease specifies that the lease is between Empire and Windermere.  Payments were due monthly for a term of sixty months.  The lease is signed as follows:

Lessor:
EMPIRE OFFICE MACHINES, INC.

By: [signature of Kelley Patzer]
KELLEY PATZER
President

Lessee:

2

WINDERMERE

By: [signature of Tom Peressini]
TOM PERESSINI
Manager

¶5     The second lease, effective September 20, 2006, was for a Kyocera KMC3225 copier and various physical attachments and features. The lease was entered and signed by the same parties and agents as the March 2006 lease. Like the March 2006 lease, it required monthly payments for sixty months.

¶6     On February 3, 2010, Windermere reorganized its debt with Empire and continued leasing the copier leased in March 2006. The terms of the revised agreement provided specifically that the agreement was between "Windemere" and Empire; and that Windermere agreed to pay the amounts specified. The signature lines of the revised agreement did not specify that Demaray, signing on behalf of Windermere, and Kelley Patzer (Patzer), signing on behalf of Empire, were signing as agents of their respective principals.

¶7     Aspen did not make the payments as agreed, but continued using the copiers. Aspen ceased doing business as Windermere in the summer of 2011. Aspen's final payment to Empire was on June 5, 2011. Empire repossessed the two copiers on June 15, 2011.

¶8     On July 26, 2011, Empire commenced an action for breach of contract against Aspen, Demaray personally, and Josh Ahmann (Ahmann), sole member of Bulltrout Brokers, LLC, which took over the Windermere franchise on or about July 1, 2011. The court granted Empire summary judgment against Aspen, and Empire entered judgment in the amount of $24,110.84. Empire and Ahmann settled their claims in mediation. Demaray moved for summary judgment on the grounds that Empire had no contract with Demaray individually.

The District Court granted Demaray's motion for summary judgment and judgment was entered accordingly. Empire now appeals from the District Court's Order granting judgment in Demaray's favor.

## STANDARD OF REVIEW

¶9 We review a district court's grant of summary judgment de novo, applying the same M. R. Civ. P. 56(c) criteria as did the district court. *Pennaco Energy, Inc. v. Mont. Bd. of Envtl. Rev.*, 2008 MT 425, ¶ 17, 347 Mont. 415, 199 P.3d 191. A district court properly grants summary judgment only when no genuine issues of material fact exist, and the moving party is entitled to judgment as a matter of law. *Pennaco Energy, Inc.*, ¶ 17.

## DISCUSSION

¶10 *Did the District Court err in granting Demaray's motion for summary judgment on the basis that he was not personally liable under a contract, when the contract's signature line did not identify that he was signing as an agent for an LLC?*

¶11 As the District Court correctly points out, a breach of contract claim requires the existence of a contract. Section 28-2-102, MCA, sets forth the essential elements of a contract:

(1) identifiable parties capable of contracting;
(2) their consent;
(3) a lawful object; and
(4) a sufficient cause or consideration.

A contract must contain all of the essential terms to be binding. *Hurly v. Lake Cabin Dev., LLC*, 2012 MT 77, ¶ 17, 364 Mont. 425, 276 P.3d 854.

¶12 Empire's argument centers on the identity of the parties. Empire first argues that because the signature line of the third contract did not specify that Demaray was acting in an

4

agency capacity, the contract is enforceable against Demaray personally. To support this argument, Empire quotes § 30-3-403(2), MCA, for the proposition that the form of an instrument's signature line controls whether the instrument may be enforced against the person signing. As Demaray points out, however, § 30-3-403(2), MCA, applies to "negotiable instruments" as defined in § 30-3-104(1), MCA, and not to a contract for lease of this nature.

¶13 Empire further argues that Demaray is personally liable on the contract because the contract did not identify Aspen as the principal and using Windermere's name is not sufficient disclosure of the principal's identity. Empire relies substantially on *Como v. Rhines*, 198 Mont. 279, 645 P.2d 948 (1982), and *Myers-Leiber Sign Co. v. Weirich*, 410 P.2d 491 (Ariz. 1966), to argue these points. In effect, Empire's argument has two parts: First, whether it was clear that Demaray was acting for a principal; and second, whether the principal's identity had been disclosed.

¶14 As a general rule, an agent is not personally liable on a contract made on behalf of a principal if the agent disclosed the principal's identity and made the engagement for the principal. *Como*, 198 Mont. at 287, 645 P.2d at 952. "A principal is undisclosed if, when an agent and a third party interact, the third party has no notice that the agent is acting for a principal." *Restatement (Third) of Agency* § 1.04(2)(b) (2006). A principal, though disclosed, may be unidentified, or "partially disclosed," where "when an agent and a third party interact, the third party has notice that the agent is acting for a principal but does not have notice of the principal's identity." *Restatement (Third) of Agency* § 1.04(2)(c). Where the principal is undisclosed, the agent becomes a party to the contract unless excluded by the

5

contract. *Restatement (Third) of Agency* § 6.03(2). Where the principal is unidentified, the agent becomes a party to the contract unless the agent and the third party agree otherwise. *Restatement (Third) of Agency* § 6.02(2).

¶15 It is the burden of the agent who executes a contract under the trade or fictitious name of a corporation, as distinguished from the true name of the corporate principal, to establish the true agency situation. *Weirich*, 410 P.2d at 492. In *Como*, 198 Mont. at 288, 645 P.2d at 953, we concluded a principal was undisclosed where there had been no factual showing that the plaintiff understood that the defendant was acting as an agent of the company in executing the employment contract. *Como*, 198 Mont. at 288, 645 P.2d at 953. The principal's existence and identity must "be disclosed to the third person *at the time the transaction is being conducted.*" *Weirich*, 410 P.2d at 493 (emphasis added).

¶16 Here, Demaray carried his burden of showing that, at the time the third contract was executed, Empire had notice that Demaray was acting as an agent. When the third contract was executed, in 2010, Empire and Windermere had been involved in a contractual, business relationship for almost four years. Demaray produced evidence that Empire had been receiving payments from "Windemere" or "Windemere of Helena" throughout this period. All of the leases between the two parties, attached to Demaray's brief, specified that the parties were Empire and Windermere. The original two leases included Windermere's business address, which was located on the same street as Empire's business address. The first two leases were signed by Tom Peressini; only the third was signed by Demaray. There is no indication that Demaray's signature evidenced an intent to substitute a new debtor in

6

place of the old one with intent to release the latter, s*ee* § 28-1-1502(2), MCA, and neither party argues that point. As the District Court correctly noted:

> If the Court adopted Empire's argument, the contracting party in all three contracts it presents would be Kelley Patzer, not Empire, since his signature appears on the agreements. This is an unreasonable interpretation and ignores the well-accepted principle that corporations must necessarily act through human individuals.

At the time the third contract was signed, Empire had reason to know Demaray was signing as an agent for a principal in light of the longstanding business relationship between the parties, the payments Empire received from Aspen d/b/a Windermere, and the terms of the prior contracts. We conclude that the existence of a principal was sufficiently disclosed in this transaction.

¶17 The remaining issue is whether Aspen's identity as principal was sufficiently disclosed to relieve Demaray of personal liability related to the contract. The central inquiry in determining whether a principal has been sufficiently disclosed to relieve an agent of liability is whether the third contracting party had notice of the principal's existence and identity at the time the contract was executed. *See Restatement (Third) of Agency* §§ 1.04(2)(b)-(c), 6.02, 6.03. "A person has notice of a fact if the person knows the fact, has reason to know the fact, has received an effective notification of the fact, or should know the fact to fulfill a duty owed to another person." *Restatement (Third) of Agency* § 1.04(4). We have explained that an agent's using the trade name under which his principal transacts business is not, by itself, a sufficient identification of the principal to protect the agent from liability. *See Como*, 198 Mont. at 287, 645 P.2d at 952 (citing *Weirich*).

7

¶18 The "notice" of the principal's identity necessary to relieve an agent of personal liability does not require a third party to have actual knowledge of the principal's identity. If the third party has "reason to know" the principal's identity, there has been sufficient notice for an agent to escape personal liability. Even if Empire did not specifically know that Demaray's principal was Aspen, Empire could still have had "notice" of the agency relationship if it had reason to know that fact. Although identifying a principal through a trade name is not *by itself* sufficient disclosure to relieve an agent of liability, it may be sufficient given the facts and circumstances of the contract. We conclude that, in light of the longstanding business relationship between Empire and Aspen d/b/a Windermere at the time the third contract was executed, Empire had reason to know that Aspen was Demaray's principal.

¶19 Finally, if any ambiguity existed as to the party intended to be bound, the contract must be interpreted "most strongly" against the party who drafted it. *Eschenbacher v. Anderson*, 2001 MT 206, ¶ 24, 306 Mont. 321, 34 P.3d 87. The agreement at issue was prepared by Empire, on its letterhead, and directed towards Windermere. It provides that "*Windemere* [sic] agrees to pay $500 per month." (Emphasis added.) It does not state that Demaray agrees to pay anything. Empire is bound by the provisions it placed in the agreement, and these provisions must be interpreted against Empire.

## CONCLUSION

¶20 Empire had no basis for asserting a claim against Demaray personally, just as Aspen could not have asserted a claim against Patzer. Aspen as principal was neither undisclosed

8

nor unidentified. No genuine issues of material fact exist and the District Court correctly granted summary judgment in Demaray's favor.

¶21    Affirmed.

/S/ MICHAEL E WHEAT

We Concur:


/S/ LAURIE McKINNON
/S/ PATRICIA COTTER
/S/ BETH BAKER