IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

MARK R. GORDON, *Plaintiff/Appellant*,

*v.*

ESTATE OF GEORGE BROOKS; SHERI SANBORNE and MARIBEL
MAZA, *Defendants/Appellees*.

No. 1 CA-CV 14-0802
FILED 5-30-2017

Appeal from the Superior Court in Maricopa County
No. CV2013-007561

The Honorable Lisa Daniel Flores, Judge

**AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH
INSTRUCTIONS**

COUNSEL

Mark R. Gordon, Phoenix
*Plaintiff/Appellant*

Tiffany & Bosco, P.A., Phoenix
By James A. Fassold, Amy D. Sells
*Counsel for Defendants/Appellees*

---

## OPINION

Judge Patricia K. Norris delivered the opinion of the Court, in which Presiding Judge Kenton D. Jones and Judge Paul J. McMurdie joined.

---

**N O R R I S**, Judge:

**¶1**     In 2007, Plaintiff/Appellant, Mark R. Gordon, purchased a house from the Estate of George Brooks. After the sale closed, Gordon sued Defendants/Appellees, the Estate and the personal representatives of the Estate, Sheri Sanborne and Maribel Maza,[1] both in their representative and individual capacities, and, as relevant here, asserted claims against them for various alleged defects and deficiencies in the house. The superior court dismissed Gordon's complaint. On appeal, Gordon does not take issue with the superior court's dismissal of his claims against the Estate or against Sanborne and Maza in their representative capacities. Instead, he argues the superior court should not have dismissed his claims against Sanborne and Maza in their individual capacities. We agree. Accordingly, we affirm in part, reverse in part, and remand for further proceedings consistent with our instructions.

### BACKGROUND AND PROCEDURAL HISTORY

**¶2**     On January 31, 2007, the probate court appointed Sanborne and Maza as personal representatives of the Estate of George Brooks.[2] While administering the Estate, Sanborne and Maza listed Brooks' house for sale. On May 19, 2007, Gordon presented Sanborne and Maza with a

---

[1]Maribel Maza's name also appears in the record as "Maribel Maza-Brooks" and "Maribel Brooks." Consistent with the caption of this case, we refer to her as "Maribel Maza."

[2]We take judicial notice of the filings in the Estate's probate proceeding, *In re Estate of Brooks*, Maricopa County Cause No. PB2007-000389. *See In re Sabino R.*, 198 Ariz. 424, 425, ¶ 4, 10 P.3d 1211, 1212 (App. 2000) (under Ariz. R. Evid. 201, appellate court may take judicial notice of anything superior court could take judicial notice of, even if superior court did not do so).

written offer to purchase the house. Sanborne and Maza accepted Gordon's offer the following day.

¶3        The purchase contract listed the seller as "George Brooks," and Sanborne and Maza signed their names under the "seller's signature" section of the contract. The purchase contract did not state or otherwise indicate that Sanborne and Maza were acting on behalf of the Estate or serving as personal representatives of the Estate.

¶4        On June 11, 2007, Gordon sent a letter to the escrow agent alleging Sanborne and Maza had breached their contractual obligations to cure several alleged deficiencies in the house. Nevertheless, Gordon submitted the final payment required to close the sale of the house to the escrow agent. The following day, on June 12, 2007, Sanborne and Maza recorded a warranty deed with the Office of the Maricopa County Recorder conveying the house to Gordon. The warranty deed, which the Recorder mailed to Gordon, identified Sanborne and Maza as the grantors acting as "Co-Personal Representatives of the estate of George W. Brooks, deceased. Maricopa County Superior Court Probate No. 2007-000389."

¶5        On February 27, 2012, Sanborne and Maza filed closing statements in the probate proceeding and represented the Estate had been fully administered with all claims resolved. In June 2013, Gordon moved to reopen the Estate, alleging he had outstanding claims against the Estate. Specifically, Gordon asserted Sanborne and Maza, as personal representatives of the Estate, had breached express and implied warranties under the purchase contract because warrantied items "were not then in working condition." The probate court denied Gordon's motion. Gordon appealed. This court affirmed the probate court's denial of Gordon's motion to reopen the Estate, *see In re Estate of Brooks* ("*Gordon I*"), 1 CA-CV 13-0592, 2015 WL 898743, at *5, ¶ 13 (Ariz. App. March 3, 2015) (mem. decision), and held Gordon had failed to present any cognizable claims against the Estate pursuant to Arizona Revised Statutes ("A.R.S.") section 14-3804(1) (2012) (requiring claim against an estate to be presented in writing, "indicating its basis, the name and address of the claimant and the amount claimed").

¶6        On May 17, 2013, before Gordon moved to reopen the Estate, Gordon filed this case. As discussed below, in his complaint, as amended, Gordon asserted claims against the Estate and Sanborne and Maza, both in their representative and individual capacities. Sanborne and Maza moved to dismiss for failure to state a claim, arguing Gordon's claims were time-barred by the probate code because they had closed the Estate and

precluded by the doctrine of claim preclusion.[3] The superior court agreed with Sanborne and Maza's arguments and granted their motion to dismiss.

**DISCUSSION**

I.     Gordon's Claims

¶7         As relevant here, in his amended complaint, Gordon alleged nine causes of action against Sanborne and Maza: count 1, failure to disclose various defects in the home; count 2, breach of warranties in the purchase contract regarding the condition of the property; count 3, breach of the purchase contract by failing to take curative action as required under the contract and by forcing Gordon to close the escrow; count 4, breach of the purchase contract by failing to have the refrigerator/freezer and irrigation systems properly repaired; count 5, breach of the purchase contract by keeping the Estate open to avoid having to participate in alternative dispute resolution as required by the contract; count 6, abuse of process by failing to comply with their statutory obligations regarding their administration of the Estate and in closing the Estate without paying or settling his claims;[4] count 7, estoppel by refusing to comply with their contractual obligations and promises; count 8, breach of their fiduciary duty to the Estate and its creditors to pay and resolve creditor claims against the Estate; and count 9, breach of the covenant of good faith and fair dealing owed to him under the purchase contract by failing to disclose and repair defects to the house and by administering the Estate in such a manner as to avoid having to pay his creditor claims against the Estate.

¶8         As reflected by the foregoing summary, Counts 5, 6, 8, and 9 (in part) were grounded on allegations the Estate had failed to pay Gordon's creditor claims or that Sanborne and Maza had failed to properly administer the Estate by failing to settle and pay Gordon's creditor claims against the Estate (the "Estate Claims"). In contrast, Counts 1, 2, 3, 4, 7, and 9 (in part) were grounded on allegations that Sanborne and Maza were

---

[3]We use the modern terms of claim and issue preclusion rather than res judicata and collateral estoppel. *See Circle K Corp. v. Indus. Comm'n*, 179 Ariz. 422, 425, 880 P.2d 642, 645 (App. 1993) (the terms claim preclusion and issue preclusion are more descriptive, and thus less likely to cause confusion, than the terms res judicata and collateral estoppel).

[4]In his opening brief, Gordon acknowledged two other causes of action, recording a false document and slander of title, were moot.

personally liable to him under the purchase contract for alleged defects and deficiencies in the house (the "Personal Liability Claims").

¶9　　　On appeal, Gordon acknowledges that this case "is not about probate administration nor about me being a creditor with probate claims against the Estate; that was the previously decided Probate Matter. This Civil Suit at-bar is against the remaining defendants, Appellees, *as individuals* . . . ." Given this acknowledgment, we do not need to decide whether the superior court properly dismissed the Estate Claims, and we deem Gordon to have abandoned the Estate Claims. *See DeElena v. S. Pac. Co.*, 121 Ariz. 563, 572, 592 P.2d 759, 768 (1979) (issues not argued on appeal are deemed abandoned); *see also Torrez v. Knowlton*, 205 Ariz. 550, 552 n.1, ¶ 3, 73 P.3d 1285, 1287 n.1 (App. 2003) (appellate court deemed appellant to have abandoned any argument that superior court improperly granted summary judgment on one claim when, on appeal, appellant only challenged summary judgment on a different claim).

¶10　　　Gordon has not, however, abandoned the Personal Liability Claims against Sanborne and Maza. On appeal, Gordon argues the superior court should not have dismissed those claims because Sanborne and Maza are individually liable on the purchase contract and the Personal Liability claims are neither time-barred nor barred by the doctrine of claim preclusion. Reviewing the superior court's ruling under the applicable standards of review, we agree with Gordon.[5]

II.　　Sanborne and Maza as Parties to the Purchase Contract

¶11　　　Gordon argues that because Sanborne and Maza failed to identify the Estate in the purchase contract, they cannot be shielded from personal liability as personal representatives of the Estate pursuant to A.R.S. § 14-3808(A) (2012). At common law, an estate was not liable on contracts entered by its personal representative in administering the estate even if the contracts were for the benefit of the estate. *See Vance v. Myers' Estate*, 494 P.2d 816, 818 (Alaska 1972). This rule of personal liability was grounded on the notion that an estate was not a legal entity. 14 Amy M. Hess et al., *Bogert's Trusts and Trustees* § 712 (3d ed., Sep. 2016) (similar to personal representative of an estate, trustee was the only legal entity who promised to perform a contract). This rule applied even when the personal

---

[5]*See Coleman v. City of Mesa*, 230 Ariz. 352, 355-56, ¶¶ 7-8, 284 P.3d 863, 866-67 (2012) (appellate court reviews a motion to dismiss for failure to state a claim de novo and will affirm only if plaintiff would not be entitled to relief under any facts susceptible of proof; appellate court reviews issues of law de novo) (citations and quotations omitted).

representative disclosed to the other contracting party that he was acting on behalf of the estate in entering the contract. In this situation, assuming the contract benefited the estate, the personal representative could recover from the estate based on reimbursement or indemnity theories. *See* Restatement (Second) of Trusts § 246 cmt. a (1959) (trustee personally liable upon contracts made by him; if liability properly incurred by him, trustee entitled to indemnity from trust estate).

¶12    This was a harsh rule. Thus, beginning in the last century, courts and legislatures began to carve out exceptions to the rule. *See generally Durden v. Century 21 Compass Points, Inc.*, 541 So.2d 1264 (Fla. Dist. Ct. App. 1984). The Uniform Probate Code ("UPC"), which Arizona has adopted, has dispensed, in part, with the rule of personal liability. Thus, a contracting party with a claim against an estate may bring that claim directly against the estate by suing the personal representative of the estate in his fiduciary, that is, representational, capacity. *See* A.R.S. § 14-3808(C) (claim based on contract entered into by personal representative in his or her fiduciary capacity may be asserted against estate by proceeding against personal representative in his or her fiduciary capacity, whether or not personal representative is individually liable); *see also Ader v. Estate of Felger*, 240 Ariz. 32, 39, ¶ 22, 375 P.3d 97, 104 (App. 2016) (estate is a collection of decedent's assets and liabilities and does not have capacity to bring or defend a suit; it can only sue and be sued through its personal representative) (citations and quotations omitted). Nevertheless, depending on the circumstances, a contracting party may also assert a direct claim against the personal representative in his or her personal or individual capacity. A.R.S. § 14-3808(B) (personal representative individually liable for obligations arising from control of estate in the course of administration of estate but only if personal representative is personally at fault).

¶13    Further, under the UPC, a personal representative may avoid personal or individual liability on a contract entered into in his or her fiduciary capacity if he or she makes certain disclosures in the contract. Section 14-3808(A), which is modeled after UPC § 3-808, provides:

> Unless otherwise provided in the contract, a personal representative is not individually liable on a contract properly entered into in his fiduciary capacity in the course of administration of the estate *unless he fails to reveal his representative capacity and identify the estate in the contract*.

(Emphasis added.) Although no reported Arizona appellate decision has interpreted this provision, the Nebraska Supreme Court interpreted this provision, under facts similar to the facts presented here, and concluded a personal representative was not entitled to the protections afforded by the statute when the personal representative failed to comply with the statutory requirements.

¶14 In *Purbaugh v. Jurgensmeier*, 483 N.W.2d 757 (Neb. 1992), the defendant, a personal representative of an estate, sold property belonging to the estate to the plaintiffs. The defendant signed the purchase contract in his own name followed by the initials "P.R." *Id.* at 760. The contract did not disclose or otherwise indicate the property was property of the estate. *Id.* The plaintiffs subsequently sued the defendant for breach of the purchase contract. *Id.* The trial court granted summary judgment to the defendant, concluding the plaintiffs had sued the wrong party because they had notice the defendant was acting in his capacity as personal representative for the estate. *Id.* at 761.

¶15 The Nebraska Supreme Court reversed and remanded. *Id.* at 764. It held the defendant had failed to comply with Nebraska's version of UPC § 3-808, which is identical to A.R.S. § 14-3808(A). The court determined the initials "P.R." after the defendant's signature, without more, failed to put the plaintiffs on notice the defendant was acting for a particular estate:

> The initials "P.R." which [the defendant] added to his signature may have been sufficient to inform a layperson that he or she was dealing with a personal representative, but there was nothing in the documents or dealings set forth in the record which would indicate what or whom [the defendant] represented . . . .

*Id.* at 763

¶16 Here, as in *Purbaugh*, Sanborne and Maza did not disclose in the purchase contract they were acting as personal representatives of the Estate, or that the Estate was the actual seller of the house. Thus, they failed to comply with the disclosure requirements of A.R.S. § 14-3808(A), and were not entitled to the protections against individual liability afforded by that statute.

¶17 Nevertheless, Sanborne and Maza argue Gordon had notice they were acting in a representative capacity because the purchase contract listed the seller as George Brooks and they signed their own names under

7

the "seller's signature" section of the purchase contract. But, even if we assume their signatures could have put Gordon on notice they were acting for a George Brooks,[6] to trigger the protections afforded by A.R.S. § 14-3808(A), they were required to "reveal" both their "representative capacity and *identify the estate in the contract*." A.R.S. § 14-3808(A) (emphasis added). The undisputed record before us reflects they failed to comply with the latter requirement.[7] That the purchase contract identified "George Brooks" as the "seller" is insufficient, without more, to provide notice that Sanborne and Maza were acting on behalf of the Estate. *Compare Myers-Leiber Sign Co.*, 2 Ariz. App. at 536, 410 P.2d at 493 (disclosure of tradename insufficient identification of principal), *with Empire Office Machines, Inc. v. Aspen Trails Assocs. LLC*, 322 P.3d 424, 426-27 (Mont. 2014) (disclosure of tradename sufficient when parties had longstanding business relationship).

¶18 Sanborne and Maza also argue the warranty deed, which they signed as the personal representatives of the Estate and which Gordon received after the sale closed, *see supra* ¶ 4, placed Gordon on notice they were acting in a representative capacity. We reject this argument. Section 14-3808(A) requires the personal representative to "reveal his representative capacity and identify the estate *in the contract*." (Emphasis added.) Thus, a personal representative's post-contractual disclosure that he was acting for an estate when he executed the contract is, simply put, too little, too late.[8]

---

[6]Gordon alleged in his amended complaint that Sanborne and Maza had "indicated" to him they "were relatives of Brooks" and authorized to negotiate and sign the purchase contract on his behalf.

[7]The disclosure requirements of A.R.S. § 14-3808(A) mirror Arizona common law regarding the liability of an agent who executes a contract for a disclosed principal. *See Cahn v. Fisher*, 167 Ariz. 219, 221, 805 P.2d 1040, 1042 (App. 1990) (agent protected from personal liability on a contract if agent discloses he is acting as an agent for a third party and the third party's identity); *Myers-Leiber Sign Co. v. Weirich*, 2 Ariz. App. 534, 536, 410 P.2d 491, 493 (1966) (agent who negotiates contracts on behalf of his principal may avoid personal liability on the contract if he discloses not only his agency but also the identity of his principal).

[8]This requirement also mirrors Arizona common law. *See Myers-Leiber Sign Co.*, 2 Ariz. App. at 536, 410 P.2d at 493 (agent must disclose identity of principal to the other party at the time of the transaction;

**¶19** The court in *Purbaugh* also rejected a similar argument. Approximately one year after the parties had signed the contract, one of the plaintiffs wrote a letter to the defendant that referenced the existence of the estate. *Purbaugh*, 483 N.W.2d at 763. And, approximately three months later, the plaintiffs received a deed to the property that identified the defendant as the grantor, acting as the personal representative for the estate. *Id.* at 760, 763. The Nebraska Supreme Court held that neither the letter nor the deed demonstrated the plaintiffs had notice of the defendant's status at the time the parties signed the contract because both were prepared *after* the parties had signed the contract. *Id.* at 763.

**¶20** Here, Sanborne and Maza failed to comply with the disclosure requirements of A.R.S. § 14-3808(A). Accordingly, they are not entitled to the protections against individual liability afforded by A.R.S. § 14-3808(A).[9]

III. The Limitation Periods of the Probate Code

**¶21** On appeal, as they did in the superior court, Sanborne and Maza argue Gordon's claims were barred by various limitation periods set out in the probate code. Specifically, Sanborne and Maza argue A.R.S. § 14-3803(C) (2012), A.R.S. § 14-3933 (2012), and A.R.S. § 14-3935 (2012) all barred Gordon's Personal Liability Claims. We address each statute in turn.

A. A.R.S. § 14-3803(C)

**¶22** Section 14-3803(C) provides time limits for "claims against a decedent's estate that arise at or after" the decedent's death. Under that section, all such claims are "barred against the estate [and] the personal representative" unless they are presented within the specified time periods. A.R.S. § 14-3803(C). On its face, this section only bars claims against an estate. It does not address claims against a personal representative in his or her individual capacity. The comments to UPC § 3-803, which is virtually identical to A.R.S. § 14-3803(C), make clear that the limitation periods specified in this provision apply only to claims against an estate: "The time

---

disclosure of identity of principal after contract executed will not relieve agent from liability on the contract).

[9]This appeal arises out of the grant of a Rule 12(b) motion. We express no opinion as to whether Sanborne and Maza are entitled to protections against individual liability based on other legal principles, including whether Gordon had actual notice they were acting on behalf of the Estate.

limits stated would not, of course, affect any personal liability in contract . . . of the personal representative . . . ." Unif. Probate Code § 3-803 cmt. (amended 2010), 8 pt. 2 U.L.A. (2013). The comments continue, "Creditors of the estate and *not of the personal representative* thus face a special limitation that runs four months after performance is due from the personal representative." *Id.* (emphasis added). Here, Gordon's Personal Liability Claims are against Sanborne and Maza individually. Thus, A.R.S. § 14-3803(C) is inapplicable.

### B.     A.R.S. § 14-3933

**¶23**          Section 14-3933 addresses a personal representative's use of a "closing statement" to close an estate. Section 14-3933(B) provides, "If no proceedings involving the personal representative[s] are pending in the court one year after the closing statement is filed, the appointment of the personal representative terminates." Even if we assume this provision applies to a personal representative acting in his or her individual capacity, termination "does not discharge a personal representative from liability for transactions or omissions occurring before termination . . . ." A.R.S. § 14-3608 (2012). Here, Gordon purchased the home before Sanborne and Maza filed the closing statements. Thus, A.R.S. § 14-3933 does not bar Gordon's Personal Liability Claims.

### C.     A.R.S. § 14-3935

**¶24**          Section 14-3935 establishes a limitation period for claims against a personal representative for breach of fiduciary duty. It provides:

> Unless previously barred by adjudication . . . the rights of successors and of creditors whose claims against the personal representative for breach of fiduciary duty have not otherwise been barred are barred unless a proceeding to assert the same is commenced within six months after the filing of the closing statement.

A.R.S. § 14-3935. As we recognized in *Tovrea v. Nolan*, 178 Ariz. 485, 875 P.2d 144 (App. 1993), this six-month limitation period applies only to individuals who are acting in the capacity as a personal representative.

**¶25**          In *Tovrea*, the defendants were the personal representatives of a decedent's estate and served as the trustees of a residuary trust created by the decedent's will. *Id.* at 487, 875 P.2d at 146. The defendants provided an accounting to themselves in their individual capacities and as trustees of

the residuary trust. *Id*. They refused, however, to provide the accounting to the trust's remainder beneficiaries, the decedent's children. *Id*. Well after the six-month limitation period of A.R.S. § 14-3935 expired, the children sued the defendants and accused them of breaching their fiduciary duties as the estate's personal representatives and as trustees of the residuary trust. *Id*. The superior court granted the defendants' motion for summary judgment, ruling the six-month limitation period of A.R.S. § 14-3935 barred all of the children's claims. *Id*. at 488, 875 P.2d at 147. On appeal, this court held the children's claims against the defendants as personal representatives were subject to A.R.S. § 14-3935 and thus time barred. *Id*. at 148, 875 P.2d at 489. But, we concluded A.R.S. § 14-3935 was inapplicable to the children's claims against the defendants as trustees. *Id*.

**¶26**       As *Tovrea* established, A.R.S. § 14-3935 does not apply to claims against a personal representative who acts in a capacity outside that of personal representative. Thus, the six-month limitation period of A.R.S. § 14-3935 is inapplicable to Gordon's Personal Liability Claims against Sanborne and Maza.

IV.     Claim Preclusion.

**¶27**       Sanborne and Maza also argue the doctrine of claim preclusion bars Gordon's Personal Liability Claims because the probate court rejected those claims when it denied his request to reopen the Estate. *See supra* ¶ 5. Under the doctrine of claim preclusion, a final judgment on the merits in a prior suit involving the same parties or the parties' privies bars a subsequent suit based on the same cause of action. *Pettit v. Pettit*, 218 Ariz. 529, 531, ¶ 4, 189 P.3d 1102, 1104 (App. 2008) (citation omitted).

**¶28**       Assuming, without deciding, that Sanborne and Maza have established the first two elements of claim preclusion, an identity of claims and a final judgment on the merits, Sanborne and Maza have failed to establish the final element of claim preclusion, the same parties or the parties' privies. Therefore, the superior court should not have dismissed Gordon's Personal Liability Claims under the doctrine of claim preclusion.

**¶29**       Under the Restatement (Second) of Judgments § 36(2) (1982), "A party appearing in an action in one capacity, individual or representative, is not thereby bound by or entitled to the benefits of the rules of [claim preclusion] in a subsequent action in which he appears in another capacity." The comments to § 36(2) explain this rule applies to administrators of estates: "For [claim preclusion] purposes the determination as to his capacity in the transaction is binding on him only in the capacity in which he has participated in the litigation." *Id*. cmt. b.

¶30        The court in *Clark v. Amoco Prod. Co.*, 794 F.2d 967 (5th Cir. 1986), applied this Restatement provision. There, two heirs of a decedent sued an oil company seeking records to establish that the decedent had an interest in real property, and, thus, mineral rights in the property. *Id.* at 969. The district court dismissed the complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6). *Id.* Then, in a second suit, after being appointed as the administrators of the decedent's estate, the same individuals brought suit against the oil company seeking an accounting of minerals extracted from the property. *Id.* As with the first suit, the district court dismissed the second suit for failure to state a claim. *Id.* Citing the Restatement (Second) of Judgments § 36(2), the Fifth Circuit reversed, explaining that claim preclusion "does not apply to a situation . . . in which a party appears in one action in an individual capacity and in a subsequent action in a representative capacity." *Clark*, 794 F.2d at 973; *see also Brooks v. Arthur*, 626 F.3d 194, 195-96 (4th Cir. 2010) (corrections officers not in privity with themselves in their official and individual capacities for purposes of claim preclusion).

¶31        The court in *Jaramillo v. Burkhart*, 999 F.2d 1241 (8th Cir. 1993), examined a grandmother's differing capacities under the related doctrine of issue preclusion. There, a grandmother filed three diversity suits against a truck driver who had fatally injured her daughter and injured her grandchildren in a car accident. *Id.* at 1243. The grandmother filed one of the suits as administrator of her daughter's estate for wrongful death. *Id.* The grandmother filed the second and third suits as guardian of the grandchildren for personal injury. *Id.* The parties tried the wrongful death action to a jury, which returned a defense verdict. *Id.* The truck driver then moved for summary judgment in the personal injury suits, arguing the suits were barred by issue preclusion. *Id.* The district court agreed and granted the truck driver's motion. *Id.*

¶32        On appeal, the Eighth Circuit reversed, holding the personal injury suits were not barred by issue preclusion because the grandmother appeared in the suits in different capacities: administrator and guardian. *Id.* at 1244, 1246. The court explained:

> A person acting in a fiduciary or representative capacity who litigates to judgment questions relating to his or her rights, duties, or liabilities in that capacity is not bound by that judgment in a subsequent proceeding with respect to his or her personal or individual rights connected with the same subject matter.

12

*Id*. at 1244 (citation omitted).

**¶33**　　　Here, Sanborne and Maza argue "Gordon's *post hoc* attempt to assert that the Amended Complaint was filed against the Co-Personal Representatives in their personal capacities is belied by a plain reading of the Amended Complaint, which defines Sanborne and Maza as the Co-Personal Representatives of the Estate." Therefore, they assert Gordon sued them only in their capacities as personal representatives of the Estate. Although Gordon alleged Sanborne and Maza had been the personal representatives of the Estate, he also alleged, in his amended complaint, that his claims were against Sanborne and Maza personally and they were individually liable on the purchase contract. Therefore, Gordon alleged causes of action against Sanborne and Maza in their individual capacities.

**¶34**　　　Because Sanborne and Maza have appeared in this case, as related to the Personal Liability Claims, in a different capacity than they appeared in *Gordon I*, they are "not thereby bound by or entitled to the benefits of the rules of [claim preclusion]" in this case. Restatement (Second) of Judgments § 36(2) (1982).

## CONCLUSION

**¶35**　　　For the foregoing reasons, the superior court should not have dismissed Gordon's Personal Liability Claims against Sanborne and Maza. Because Gordon has abandoned the Estate Claims on appeal, we affirm the superior court's dismissal of the Estate Claims and remand this case for further proceedings on, but only on, the Personal Liability Claims. On remand, the superior court shall dismiss any claims Gordon attempts to assert against the Estate or against Sanborne and Maza as personal representatives of the Estate which pertain in any way to their administration of the Estate.[10]

---

[10]On appeal, Gordon has also argued the superior court violated his due process rights in dismissing his amended complaint. That argument is frivolous and we reject it.

**¶36** Because Sanborne and Maza have not prevailed on Gordon's Personal Liability Claims, we deny their request for attorneys' fees pursuant to A.R.S. § 12-341.01 (2016). As the prevailing party on appeal, we award Gordon his costs on appeal pursuant to A.R.S. § 12-341 (2016), contingent upon his compliance with Arizona Rule of Civil Appellate Procedure 21.



AMY M. WOOD • Clerk of the Court
FILED: AA